698 So.2d 449 (1997)
The LAFRENIERE PARK FOUNDATION
v.
The FRIENDS OF LAFRENIERE PARK, INC.
No. 97-CA-152.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1997.
*450 Robert T. Garrity, Jr., Richard E. Anderson, Harahan, for Plaintiff/Appellant The Lafreniere Park Foundation.
Salvador Anzelmo, Michael J. Laughlin, New Orleans, David R. Sherman, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for Defendant/Appellee The Friends of Lafreniere Park, Inc.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Plaintiff, The Lafreniere Park Foundation, (Foundation) appeals a judgment of the trial court denying a preliminary injunction preventing defendant, The Friends of Lafreniere Park, Inc., (Friends) from using the name "Friends of Lafreniere Park". In its petition, the Foundation makes allegations of infringement of its trade name and unfair trade practices under LSA-R.S. 51:1401 et seq. For reasons that follow, we affirm the trial court's ruling.
The record shows that the Foundation was incorporated on September 23, 1980 as a private Louisiana non-profit corporation for the principal activity of fund raising through volunteer activities to support the recreational facilities in Lafreniere Park in Jefferson Parish, Louisiana. Contained in the by-laws of the Foundation is a provision for the establishment of a special membership in the Foundation designated as the "Friends of Lafreniere Park", which was established for the exclusive purpose of serving as an auxiliary in support of the Foundation's charitable efforts. That name was never registered with the Secretary of State.
After some discord developed between leaders of the Foundation and the Jefferson Parish Council, a new group was formed for the same purpose in November, 1996. The new organization was incorporated under the name of Friends of Lafreniere Park, Inc. Shortly afterward, the Foundation filed this *451 action seeking injunctive relief against Friends preventing the organization from using the name, "Friends of Lafreniere Park".
At the hearing, Ms. Carol Berlier, the executive director of the Foundation since 1988, testified in conjunction with documents introduced into evidence which show that the Foundation used the term "Friends of Lafreniere Park" at least since 1984 to refer to voluntary membership in its organization. Ms. Berlier explained that when she became director, the arm of the Foundation known as the Friends of Lafreniere Park was used to generate funds through membership, and to promote awareness of the park. Members received cards and window decals, issued in the name of Friends of Lafreniere Park, which entitled them to certain discounts on tickets to various park functions.
Documentary evidence contained in the record shows that the Foundation circulated brochures around the community seeking membership in the Friends of Lafreniere Park throughout its existence. Its quarterly newsletter entitled "Just Among Friends" makes references to the membership and activities of the Friends of Lafreniere Park. Envelopes used to solicit funds from the public were addressed to Friends of Lafreniere Park, and the Foundation has a bulk mail permit in the name of Lafreniere Park Foundation, d/b/a Friends of Lafreniere Park. The Foundation also used stationery under the name of Friends of Lafreniere Park, and has a bank account at First NBC in Jefferson in the name of Lafreniere Park Foundation, d/b/a Friends of Lafreniere Park. The record also contains various newspaper articles about the Foundation and the arm of the Foundation known as the Friends of Lafreniere Park.
Ms. Berlier also testified that the Jefferson Parish Council passed a resolution in 1987 indemnifying the Foundation and its voluntary membership, the Friends of Lafreniere Park through insurance. That indemnity was revoked by a resolution passed in 1995.
According to Ms. Berlier's testimony, the Foundation operated out of an office located in the park at 3000 Downs Boulevard from the time of its inception in 1980 until 1995. At that time, the Jefferson Parish Council ordered the Foundation to leave the premises. In November, 1996, Friends of Lafreniere Park, Inc. was created using the mailing address of the office space on Downs Boulevard formerly occupied by the Foundation. The Foundation now maintains an office elsewhere. Ms. Berlier testified that the Post Office is confused by the new organization and has been forwarding mail sent to the Friends address on Downs Boulevard to the Foundation.
When questioned about any other confusion the new group may have caused the Foundation, Ms. Berlier stated she had no knowledge of any and had no way of knowing if the public is confused. Further, she stated she would have no way of knowing if any of the memberships intended for the Foundation were sent to Friends. She stated that the Foundation has a membership of about 420. There was no evidence to show whether that number was diminished in any way by the formation of Friends.
The Foundation also presented evidence from Thomas Chambers, a former president and current member of the board of directors of the Foundation, who testified that he was responsible for moving the "Dogs on Hogs" motorcycle rally from another location to Lafreniere Park. The rally is a fund raiser for Children's Hospital and has been highly successful in the past few years. Because of the conflict between the Jefferson Parish Council and the Foundation, the parish canceled permits for the rally after they were issued, necessitating legal action by the Foundation to ensure that the rally would take place. Mr. Chambers stated that the Harley Owners Group, whose members ride in the Dogs on Hogs event, and other organizations would not be inclined to participate in park fund raisers in which the Foundation was not involved. Although Mr. Chambers testified that various organizations would boycott such events if the Foundation was not in control, the reason for the boycott is not clear from his testimony. He simply stated that the organizations would not participate if the fund raiser was a parish sponsored event because, "they want their money to go to a nonprofit foundation". On cross-examination, *452 however, he admitted that he was unaware that Friends was also a nonprofit entity.
After hearing all of the evidence and arguments of counsel, the trial court denied the preliminary injunction because there was no showing of irreparable injury.
An injunction is a harsh, drastic, and extraordinary remedy, and should only issue where the party seeking it is threatened with irreparable loss or injury without adequate remedy at law. Greenberg v. Burglass, 254 La. 1019, 229 So.2d 83 (La.1969), cert. den. 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Dupre v. Schering-Plough Health Care Products, Inc., 95-213 (La.App. 3 Cir. 5/31/95), 656 So.2d 786. A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Federal Nat. Mortg. Ass'n v. O'Donnell, 446 So.2d 395 (La.App. 5 Cir.1984); Corrosion Specialties and Supply, Inc. v. Dicharry, 93-196 (La. App. 5 Cir. 2/9/94), 631 So.2d 1389, writ denied, 94-0597 (La.3/25/94), 635 So.2d 242. The trial court has great discretion to grant or deny the relief. Id.
LSA-C.C.P. art 3601 provides in pertinent part that, "(a)n injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law". Clearly, absent specific authorization by law, an injunction will not issue without a showing of irreparable injury. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1967); Corrosion Specialties and Supply, Inc. v. Dicharry, supra.
In order to obtain a preliminary injunction a plaintiff must show that he will suffer irreparable harm if the injunction is not granted, that he is entitled to relief sought, and he must make a prima facie showing that he will prevail on the merits. Id. at 631 So.2d at 1391-92. It is not necessary to show irreparable injury, however, when the act complained of is unlawful. Ouachita Parish Police Jury v. American Waste and Pollution Control, 606 So.2d 1341 (La.App. 2 Cir.1992), writ den. 609 So.2d 234 (La.1992), cert. den. 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993); Camp, Dresser & McKee v. Steimle & Assoc., 94-547 (La.App. 5 Cir. 2/15/95), 652 So.2d 44.
Appellant, Foundation, does not address the need for a showing of irreparable harm in brief to this court. Appellee, Friends, defends the trial court's ruling by arguing that the failure to register the name precludes the Foundation from using the remedies provided in LSA-R.S. 51:223.[1] The Foundation counters that 51:223 applies exclusively to trade marks and is inapplicable to trade names. It reiterates the jurisprudential law establishing a cause of action for trade name infringement. While we find no fault with the Foundation's claim that a cause of action exists for infringement of a trade name which is not registered, that argument still does not address the issue of whether a statutory exception to the irreparable harm requirement exists in such cases.
Recently the Louisiana Supreme Court fully examined the law of trade marks and trade names in Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 94-2203 (La.4/10/95), 652 So.2d 1306. In Gulf Coast at 652 So.2d at 1311 the court stated:
It cannot be said that the legislature intended "mark" to include trade names, as the two are specifically defined as different things in the Act, and the legislature on numerous occasions has shown its understanding that the two terms refer to different things by either amending "mark" to "trade name, trademark, or service mark" or by using the terms "mark" *453 and "trade name" in the same section to denote two different things. What has resulted is a statutory scheme whereby trademarks and service marks are accorded substantive statutory protections, but trade names, while allowed to be registered, receive no statutory protections for infringement. The question then is what protections did the legislature intend for trade names? For the following reasons, we conclude the legislature intended to leave the substantive protection of trade names to the jurisprudentially developing law relating to trade names as part of the law of unfair competition. (Footnote excluded, emphasis added).
Because the protection of, and remedies for, infringement of a trade name are jurisprudential and not statutory, there can be no statutory exception to the requirement of the showing of irreparable harm. Therefore, the trial court was correct in its ruling that irreparable harm must be shown before the injunction will issue.
To obtain a preliminary injunction the moving party must show that the damage he will suffer may be irreparable if the injunction does not issue, that he is entitled to the relief sought, and must make a prima facie showing that he will prevail on the merits of the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979). Irreparable injury means the moving party cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards. Bagert v. Goldsmith, 504 So.2d 648 (La.App. 4 Cir.1987), writ den. 508 So.2d 74 (1987); McSwain v. Bryant, 503 So.2d 605 (La.App. 4 Cir.1987); Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), cert. den. Matherne v. Terrebonne Parish Police Jury, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982).
We believe the Foundation failed to meet its burden of proof to show that the use of the name Friends of Lafreniere Park by the new organization will cause irreparable harm if the preliminary injunction is not issued. Neither of the witnesses testified to any loss of membership or even professed knowledge of confusion other than that of the Postal Service. While Ms. Berlier testified extensively about how the term Friends of Lafreniere Park was used by the Foundation, she offered no evidence as to how the new organization caused confusion in the public. Further, Mr. Chambers admitted that most outside organizations who participate in events in the park are merely concerned that their donations go to a nonprofit organization, a description which applies to both parties. We also find no evidence in the record that Friends is actually recruiting individuals for membership in its organization.
While there is testimony to the fact that the two groups are at odds, the only confusion shown was that the Postal Service has misrouted some mail. There has been no showing that the Foundation has lost members, or is likely to do so. There is no showing that an injunction is necessary to preserve the existing status pending a trial on the merits.
Nor can there be any injunctive relief for the Foundation under its allegation of unfair trade practices. While LSA-R.S. 51:1401 et seq. makes such practices unlawful, it only allows the state through the attorney general to seek injunctive relief. LSA-R.S. 51:1407; Monroe Med. Clinic v. Hosp. Corp. of Am., 522 So.2d 1362 (La.App. 2 Cir.1988).
For the foregoing reasons, we find that a showing of irreparable harm was necessary, and in this case inadequate, for the issuance of a preliminary injunction. This opinion is limited to the narrow question presented in this appeal, i.e. whether a showing of irreparable harm was necessary and, if so, whether the showing made was adequate to justify the issuance of a preliminary injunction. We make no comment on the merits of any present or future claim the Foundation may have against Friends for its actions. We recognize that the denial of a preliminary injunction does not conclude the proceedings, which may proceed to trial on the permanent injunction. Consequently, we affirm the trial court and remand the matter for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] Any owner of a mark registered under this Sub-part may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof and any court of competent jurisdiction may grant injunctions to retrain such manufacture, use, display or sale as may be by the said court deemed just and reasonable, and may require the defendants to pay to such owner all profits derived from and/or all damages suffered by reason of such wrongful manufacture, use, display or sale; and such court may also order that any such counterfeits or imitations in the possession or under the control of any defendant in such case, be delivered to an officer of the court, or to the complainant, to be destroyed. The enumeration of any right or remedy herein shall not affect a registrant's right to prosecute under any penal law of this state.