983 So.2d 133 (2008)
Shirley McCORD and Shirley "Toni" McCord CPA, A Professional Accounting Corporation
v.
Jay R. WEST.
No. 07-CA-958.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
*134 J. Scott Loeb, Ryan M. McCabe, Montgomery, Barnett, Brown, Read, Hammond *135 & Mintz, L.L.P., Mandeville, LA, for Plaintiff/Appellant.
Gerard P. Archer, Jane L. Beebe, Attorneys at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
Plaintiffs, Shirley McCord and Shirley "Toni" McCord, CPA, a Professional Accounting Corporation (McCord), appeal the grant of summary judgment in favor of defendant, Jay R. West, Jr. (West). Plaintiffs also appeal the denial of their Motion for Partial Summary Judgment. At issue is the enforceability of a non-competition agreement. In the judgment dated March 14, 2007, the trial court found that the non-competition agreement did not comply with LSA-R.S. 23:921 because it was overly broad in scope and duration. For the reasons that follow, we affirm.
McCord, a former employee and shareholder of defendant, West's accounting practice, purchased the accounting practice from West in 2000, after West expressed the desire to retire and live abroad. In connection with the sale, the parties entered into several written agreements, all dated February 22, 2000:
1) the Act of Sale from Jay R. West, Jr. to Shirley McCord, CPA;
2) the Employment Agreement between Shirley McCord, CPA, Inc.;
3) Revision # 1 to the Operating Agreement of Jay West, CPA & Associates, L.L.C.;
4) Act of Sale # 2 from Jay R. West, CPA & Associates, L.L.C., to Shirley McCord, CPA, Inc.; and
5) Bond for Deed from Jay R. West (hereinafter the "sales agreements").
The Employment Agreement and the Sales Agreement contained a non-competition agreement and a non-solicitation agreement wherein West agreed not to compete with McCord or solicit McCord's clients, with the geographical restriction of Jefferson and Orleans Parishes, but no temporal restriction.
According to the record and briefs, for a time West complied with his obligations under the sales agreements, working part time for McCord and also living abroad in Thailand. Sometime in 2001, he advised McCord that he wished to end his retirement and perform accounting services for persons or entities other than McCord. Apparently he asked McCord to modify the terms of the sales agreements, but she refused. At some point, according to her brief, McCord feared that West might be violating the sales agreements by soliciting clients from her client list and/or engaging in the accounting business.
Attempts to resolve their differences failed. On February 1, 2002, West was notified by McCord, through a letter from the attorney who drew up the Sales Agreements, Michael Rice, that McCord wished to terminate his employment. The parties continued to try to resolve their other differences involving the Sales Agreements. On February 7, 2002, the parties entered into a Supplemental Agreement, drafted by West's attorney, that referred to the Sales Agreements. This Supplemental Agreement, among other things, waived any claim McCord might have for West's conduct to the effective date of the Supplemental Agreement. The Supplemental Agreement also contained another non-competition clause whereby West agreed not to compete with McCord in the practice of public accounting or tax preparation in any fashion before February 7, *136 2004, with the geographical restrictions of Jefferson and Orleans Parishes.
Subsequent to the confection of the Supplemental Agreement, on October 2, 2002, plaintiffs filed a Petition for Preliminary and Permanent Injunction and Damages, which alleged that West engaged in the practice of accounting in Orleans and Jefferson Parishes as a competitor of McCord Corp. and wrongfully solicited McCord's clients, in violation of the 2000 and 2002 agreements. Plaintiffs prayed that West be enjoined from owning or operating an accounting business and be enjoined from soliciting McCord's clients in the Parishes of Orleans and Jefferson for a period of two years from February 7, 2002; that West be enjoined from divulging McCord's client list, and that West be required to return to McCord all client lists and any and all other trade secrets and confidential and proprietary information. The Petition also prayed for damages and all general and equitable relief to which petitioner may be entitled.
On January 13, 2003, the trial court held a hearing regarding the Preliminary Injunction. The court granted the Petition, enjoining West from carrying on or engaging in his own accounting business in the Parish of Jefferson or Orleans until February 7, 2004; from soliciting any clients of McCord within McCord's business area of the Parishes of Jefferson and Orleans until February 7, 2004; divulging McCord's customer list, information related to clients, trade secrets, confidential information, and requiring West to return to McCord all client lists, copies of client lists, confidential information relating to clients, and trade secrets and other confidential and proprietary information of McCord. McCord was also ordered to furnish a bond in the amount of $25,000.00, to provide compensation to West if it was later found that the injunction was wrongfully issued. The issue of damages for West's alleged breaches of the sales agreements and/or Supplemental Agreement was not addressed at that hearing.
West sought relief in this Court, which denied his Writ Application, finding no error in the granting of the preliminary injunction.[1] The Supreme Court also denied West's Writ Application.[2] The record reflects no further action in this case until December of 2005, well after the preliminary injunction expired of its own terms.
Thereafter, on June 8, 2006, West filed a Motion for Summary Judgment. Therein, West argued that there were no issues of material fact that supported the award of damages to McCord. He asserted that the non-competition clause contained in the February 22, 2000 employment agreement failed to comply with LSA-R.S. 23:921 because it failed to contain geographical and temporal restrictions. Second, he cited the waiver contained in the February 7, 2002 supplemental agreement, whereby McCord agreed to waive any potential claims against West for his previous acts or conduct. Third, he argued that the non-competition clause contained in the February 7, 2002 agreement was also in derogation of LSA-R.S. 23:921 because the parties were engaged in none of the statutorily accepted relationships with each other (employer/employee, corporation/shareholder, partnership/partner, and franchise/franchisee) at the time the agreement was signed, and furthermore the contract was vague and ambiguous.
McCord filed a Motion for Partial Summary Judgment, asking for a finding that West had breached his contractual obligations to her and the business. In *137 support thereof, she furnished the Memorandum in Support of her Motion for Preliminary Injunction, her affidavit, the affidavit of Michael J. Rice, III, and the deposition of Jay West. McCord also filed an Opposition to West's Motion for Summary Judgment, arguing that the issue had already been addressed, adversely to West, in the granting of McCord's Petition for Injunction.
Both Motions came for hearing on February 14, 2007. In a judgment dated March 14, 2007, the trial court rendered judgment in favor of West, granting his Motion for Summary Judgment, and against McCord, denying her Motion for Partial Summary Judgment, stating that the non-competition agreement between the parties did not comply with Louisiana's non-competition statute (LSA-R.S. 23:921), finding that the non-competition agreement was overly broad in scope and duration.
McCord filed a Motion for New Trial, arguing that the judgment was against the law and evidence, and taking the position that only the validity of 2002 agreement was before the court. Following a hearing, the trial court denied the Motion for New Trial on June 20, 2007. This timely appeal followed.
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir.9/16/98), 719 So.2d 1086. The decision as to the propriety of a grant of a Motion for Summary Judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir. 1988).
At the time the 2000 and 2002 agreements were signed, LSA-R.S. 23:921 provided, in pertinent part[3]:
§ 921. Restraint of business prohibited; restraint on forum prohibited; competing business; contracts against engaging in; provisions for
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, *138 trade, or business of any kind, except as provided in this Section, shall be null and void.
* * *
B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
* * *
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
This Court stated in Hose Specialty & Supply Management Co., Inc., 03-823 (La. App. 5 Cir. 12/30/03), 865 So.2d 183, 193:
La.R.S. 23:921(A)(1) expresses Louisiana's strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24, 808 So.2d at 298. "Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." Id.

The SWAT 24 court held that La. R.S. 23:921(C) only allows an agreement that prohibits an employee from leaving and beginning his own similar business in competition with his original employer:
The presumption arising from the legislature's deliberate change in the language, combined with the principle that we must strictly construe the exceptions to the longstanding public policy of this state disfavoring agreements not to compete, lead us to believe that the legislature intended that a noncompetition agreement restraining an employee from carrying on or engaging in his own business may be valid provided certain conditions are met. Conversely, an agreement that restrains an employee from carrying on or engaging in a competing business as the employee of another does not fall within the exception provided *139 for by La. R.S. 23:921(C) and, instead, would be null and void pursuant to Subsection (A). 808 So.2d at 306.
Thus, an agreement cannot prohibit an employee from working for a similar business in competition with the original employer. "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." SWAT 24, 808 So.2d at 298.
West argues that the 2000 agreement was null as a matter of law because it failed to include temporal restrictions. He further argues that the 2002 Supplemental Agreement is unenforceable because he was not McCord's employee when it was signed, having been terminated a week prior to the agreement's date. He further argues that the 2002 Supplemental Agreement is null in that it seeks to enforce its terms more than two years past the sales date in 2000.
The 2000 agreement falls under LSA-R.S. 23:921(B), since it arose in the context of the sale of a business. We agree that it did not comply with that statute, because it contained no temporal restrictions.
We find that parties entered into the 2002 Supplemental Agreement in order to resolve their differences under the Sales Agreements, which, according to this record, began sometime in 2001,[4] and further, to resolve employment-related issues. West continued to be employed by McCord, at least on a part-time basis and according to the employment agreement between the parties, while the parties attempted to resolve their issues. Given that the 2002 Supplemental Agreement was made in order to resolve issues stemming from the 2000 sales agreements, including the issue of West's employment, and given that it was signed in such close temporal proximity to West's employment with McCord, we find that the 2002 Supplemental Agreement is not invalid as a matter of law merely because West had left McCord's employment one week earlier.
West asserts that the 2002 agreement is an extension of the illegal 2000 agreement, and thus is void on that basis. We disagree that the 2002 Supplemental Agreement is merely an extension of the 2000 agreement, though the latter does refer to the former.[5] The 2000 agreement, as stated before, fell under the provisions of LSA-R.S. 23:921(B). The 2002 agreement, however, falls under the provisions of LSA-R.S. 23:921(C), since it arose out of the termination of West's employment with McCord and also to clarify other obligations under the Sales Agreements.
The trial court held that the non-competition clause in the 2002 Supplemental Agreement did not comply with LSA-R.S. 23:921 because it was overly broad in scope and duration. The trial court did not elaborate further.
*140 This Court reviews summary judgments de novo. Because it is not clear that the trial court excluded the 2002 agreement from its consideration, and because we find that it is not merely an extension of the 2000 agreement, and because we decline to find it unenforceable on the grounds that West's employment with McCord had ended one week earlier, we consider whether the 2002 Supplemental Agreement's non-competition clause violated LSA-R.S. 23:921.
Section 3 of the Supplemental Agreement, dated February 8, 2002, states:
Jay West agrees that he shall not compete in the practice of public accounting or tax preparation in any fashion before February 7, 2004. Competition in this context means working in the Parishes of Orleans and Jefferson or anywhere such employment would involve providing public accounting or tax services to individuals, trust, estates, LLCs, partnerships or corporations that have their principal place of business in the Parishes of Orleans or Jefferson.
It appears that this noncompetition agreement is overbroad in scope because it restricts West from employment in the practice of public accounting or tax preparation in any fashion. This clause could be read to prohibit West from not only starting his own accounting business, but being employed by a competitor of McCord's, which the SWAT court found overbroad and in violation of LSA-R.S. 23:921. Accordingly, the trial court did not err in finding the 2002 non-competition clause overbroad in scope in violation of LSA-R.S. 23:921.
Further, we also find that the trial court did not err in concluding that the non-competition clause was overly broad in duration. West's employment ended on February 1, 2002. LSA-R.S. 23:921(C) clearly allows an agreement's duration of only two years from the date of termination. In this case, the agreement's temporal restriction was until February 7, 2004, which was one week too long.
McCord has argued that the grant of summary judgment to West is inconsistent with the trial court's grant of her Petition for Preliminary Injunction in 2003. A preliminary injunction is a procedural device, interlocutory in nature, designed to preserve the existing status pending a trial of the issues on the merits of the case. LSA-C.C.P. art. 3601; Levine v. First Nat. Bank of Commerce, XXXX-XXXX (La.12/15/06), 948 So.2d 1051. A preliminary injunction is a summary proceeding and merely requires a prima facie showing of a good chance to prevail on the merits. Bank One, Nat. Ass'n v. Velten, 04-2001 (La.App. 4 Cir. 8/17/05), 917 So.2d 454. The principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979). Accordingly, the fact that a preliminary injunction was granted in McCord's favor does not preclude a different result on the merits.[6]
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] 03-C-210 (March 7, 2003).
[2] 2003-CC-0985 (April 29, 2003).
[3] In 2003, the legislature amended this statute by adding paragraph H, subsequently redesignated paragraph D, which states:

D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
This Court, in Hose Specialty & Supply Management Co., Inc., 03-823 (La.App. 5 Cir. 12/30/03), 865 So.2d 183, found that the change affected contract rights, and declined to apply it retroactively.
[4] It was also during that time that McCord felt that West was in violation of the non-competition and non-solicitation clauses contained in those agreements. It is true that the non-competition agreement contained in the 2000 sales agreements contained no temporal restrictions; however, it is equally clear that West is alleged to have violated it, within the Parishes of Jefferson and Orleans, well within two years of the 2000 sales agreements.
[5] For instance, in Section 1, where West agrees he will make no further contacts or conduct any activity in violation of the February 22, 2000 agreements (in exchange for which McCord agreed to waive any potential claims she may have had against West for his previous acts or conduct). Further, in Section 2, West agrees to waive the provisions of Section 7.2 in the Act of Sale (# 1).
[6] We note that the relief granted in the preliminary injunction is narrower than the prohibitions in the 2002 non-competition clause.