994 So.2d 57 (2008)
NOVELAIRE TECHNOLOGIES, L.L.C.
v.
Martin Kenneth HARRISON, Barbara Bucklin and Essential Humidity Solutions, L.L.C.
No. 08-CA-157.
Court of Appeal of Louisiana, Fifth Circuit.
August 19, 2008.
*59 A. Justin Ourso, III, Christopher D. Martin, Attorneys at Law, Baton Rouge, LA, for Plaintiff/Appellee.
Glen R. Galbraith, Attorney at Law, Hammond, LA, for Defendant/Appellant.
Panel composed of Judges FREDERICKA HOMBERG WICKER, GREG G. GUIDRY, and ROBERT L. LOBRANO, Pro tempore.
GREG G. GUIDRY, Judge.
The Defendants, Martin Kenneth Harrison, Barbara Bucklin, and Essential Humidity Solutions L.L.C. (EHS) appeal from a preliminary injunction granted in favor of the Plaintiff, Novelaire Technologies, L.L.C., in a suit for breach of an agreement relating to the design of and/or improvements to a dehumidifier sold by the Plaintiff, for breach of a nondisclosure provision, and for unfair trade practices. We affirm.
The Plaintiff manufactures energy recovery and dehumidification equipment, including the desiccant dehumidifier at issue here.[1] Defendant, Martin Harrison, worked for the Plaintiff as a designer in its engineering department beginning on July 1, 1998, until his resignation on January 23, 2004. He was paid through February 6, 2004. As part of his employment, Harrison executed an agreement in which Harrison agreed that all designs, and/or improvements, Harrison conceived of or made relating to the Plaintiff's business were the property of the Plaintiff. The agreement further obligated Harrison not to disclose or use any confidential information of the Plaintiff without its written consent. While working in the course and scope of his employment, however, Harrison secretly used the Plaintiff's materials, resources and equipment to develop improvements to the design of the Model DH-50 dehumidifier, which he and Bucklin planned to sell for their own profit after he resigned. The planning for this event began many months before Harrison resigned.[2]
*60 Shortly after he left the Plaintiff's employ, on February 5, 2004, Harrison and Bucklin organized their company, EHS, and immediately began selling the improved product to the Plaintiffs sole customer for the product, AAR, a Michigan company.[3] EHS manufactured and sold the dehumidifier for $100-$400 less than AAR had been paying to the Plaintiff.
Bucklin was aware of Harrison's contract with the Plaintiff and its business relationship with AAR. She was intimately involved in the plan to sell the product with Harrison's improvements. She was also actively involved in the management and operation of EHS.
When the Plaintiff discovered Harrison's conduct, it sent a demand letter to him to cease and desist. Following that letter, Harrison donated his interest in the property to Bucklin.[4]
As a result of the Defendants' acts, the Plaintiff filed suit in June of 2004.[5] The Plaintiff also requested a preliminary injunction to prohibit the Defendants from marketing, designing, distributing, manufacturing, or selling a desiccant dehumidifier based on the Novelaire KH-50.
In August of 2007, the trial judge granted the injunction. The trial judge found that Harrison violated his agreement and breached a fiduciary duty to the Plaintiff. The trial judge further found that the Plaintiff made a strong showing that it would succeed at trial of the merits. He also concluded that a showing of irreparable harm was unnecessary for issuing the preliminary injunction under La.C.C. art. 1987.
The Defendants argue that the contract cannot preclude Harrison from using the technology, first because it is in the public domain, and secondly, because federal law preempts state law in this case. They further assert that the trial judge erred in finding the Plaintiff was not required to prove irreparable harm to obtain the injunction, in finding Harrison breached a fiduciary duty to Plaintiff, in finding Bucklin tortiously interfered with the contract, and in concluding the Defendants engaged in unfair trade practices.

PRELIMINARY INJUNCTION
An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law ..." La.C.C.P. art. 3601. A. During the pendency of an action for an injunction the court may issue a temporary restraining order, preliminary injunction, or both. C.C.P. art. 3601 C.
A preliminary injunction is a procedural device, interlocutory in nature, designed to preserve the existing status pending a trial of the issues on the merits of the case. La.C.C.P. art. 3601; Levine v. First Nat. Bank of Commerce, 06-0394 (La.12/15/06), 948 So.2d 1051; McCord v. West, 07-958 (La.App. 5 Cir. 3/25/08), 983 So.2d 133, 140. It is a summary proceeding and merely requires a prima facie showing of a good chance to prevail on the merits. McCord, 983 So.2d at 140. The principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues. Smith v. West *61 Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979); McCord, 983 So.2d at 140.

a) Standard of review
The Defendants first assert that, because the trial judge erred legally, this Court must review the case de novo. We disagree.
The trial court's issuance of a preliminary injunction will not be disturbed on appeal absent a clear abuse of discretion. H2O Hair, Inc. v. Marquette, 06-930 (La. App. 5 Cir. 5/15/07), 960 So.2d 250, 259.[6]
While a decision related to contract interpretation may be generally interpreted under a de novo standard of review, the issue here is not interpretation of the agreement. Thus, the standard of review is whether the trial judge abused his great discretion in granting the preliminary injunction.

b) Irreparable Injury
To obtain a preliminary injunction, the moving party must show it is entitled to the relief sought, without which irreparable injury, loss or damage will result. See, La.C.C.P. art. 3601. Proof irreparable injury is not required, however, in cases involving an obligation "not to do." La. C.C. art. 1987; New Orleans Cigarette Service Corp. v. Sicarelli, 73 So.2d 339, 341 (La.App.Orl.1954); Louisiana Gaming Corp. v. Jerry's Package Store, 93-320 (La. App. 3 Cir. 12/8/93); 629 So.2d 479, 482.
The Defendants argue that whether or not the contract creates an obligation not to do, it is also an invalid non-compete agreement, citing R.S. 23:921, which requires a showing of irreparable injury.
This agreement is not a non-competition agreement within the meaning of the statute. The Defendants are not precluded from operating a business selling dehumidifiers. Harrison is simply precluded under the contract from using any improvements or designs he made while working for the Plaintiff, and from disclosing or using the Plaintiff's confidential information for his own profit without consent of the Plaintiff. Thus, the non-competition statute is inapplicable here. We find that the Plaintiff was not required to prove irreparable injury.

PREEMPTION
The Defendants argue that federal patent law preempts Plaintiffs exclusive right to the dehumidifier because it is in the public domain and no one can have exclusive rights to it.
Preemption applies to a federal law that displaces a state law addressing the same subject. See, CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387(1993); Myrick v. Freuhauf Corp., 13 F.3d 1516, 1519 (11th Cir.1994). That is not the case here. Thus, preemption does not apply to the contract.
The Defendant further argues that the federal patent law specifically preempts the claim under the Louisiana Unfair Trade Practices and Consumer Protection Law (the unfair practices statute[7]), because it conflicts with 35 U.S.C.A. § 101. That statute states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent *62 therefor, subject to the conditions and requirements of this title."[8]
The Defendants agree that the Plaintiff does not claim patent infringement, but nevertheless argue that patent law preempts the state unfair trade practices statute to allow them to sell the product despite the contract. They cite Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 164, 109 S.Ct. 971, 103 L.Ed.2d 118, (1989).
The Supreme Court in Bonito held that a statute criminalizing the act of "reverse engineering" another company's product conflicted with established patent law that allows a person to reproduce a product that is in general circulation and unprotected by a patent. Bonito is distinguishable. Here, the claim under the unfair trade practices statute is that the Defendants allegedly acted in concert to violate the contract and breach the trust of the Plaintiff by using its resources to develop the improvements that then allowed them to compete with the Plaintiff for, and obtain, the business of its only customer for that product.
The state unfair trade practices statute is designed to protect consumers and business competitors and to deter injury to competition by criminalizing unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. See: La.R.S. 51:1405.[9] The state statute allows the courts to make this determination on case by case basis. Marshall v. Citicorp Mortgage, Inc., 601 So.2d 669, 670 (La.App. 5th Cir.1992).
The patent law is designed to encourage "patentable invention and the prompt disclosure of such innovations." Bonito Boats, 489 U.S. at 155, 109 S.Ct. at 979-980. The state law only seeks to prevent unethical business practices. There is no conflict between the federal and state laws in this case. Thus, we find preemption does not apply.
The Defendants also argue the Plaintiff failed to prove that any actions by Harrison, Bucklin or EHS constitute an unfair trade practice, and thus failed to prove a prima facie case, as well as irreparable injury, which is required under the unfair trade practices statute.
The unfair trade practices statute makes unlawful any unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce.[10] Under R.S. 51:1407, the attorney general is given the authority to issue injunctive relief without the showing of irreparable harm against a violator or potential violator. Only the State of Louisiana, through the attorney general may seek injunctive relief, although the Plaintiff has a right of action to recover compensation for its damages under the statute. See, Lafreniere Park Found. v. Friends of Lafreniere Park, Inc., 97-152 (La.App. 5 Cir. 7/29/97), 698 So.2d 449, 452. In this case, the trial judge did not issue the injunction under the unfair trade practices statute. Thus, the unfair trade practices statute does not apply to the determination of whether the preliminary injunction was properly granted.

VALIDITY OF CONTRACT RESTRICTIONS
The Defendants next claim that the dehumidifier is in the public domain and *63 cannot be susceptible to private ownership under La.C.C. art 449. They argue that C.C. art. 449 prohibits transferring by contract, objects or things not subject to private ownership, or common things.[11]
The trial judge found the contract to be a valid contract for an obligation "not to do." An obligation not to do binds the obligor not to take a certain course of action. The obligations to do or not to do are enforceable under La.C.C. arts. 1986 and 1987.[12] Either may be enforced through injunctive relief and stipulated damages. See, Saul Litivinoff, The Law of Obligations 5 § 1.4 (2d Ed.2008).
Harrison agreed in the contract that all designs and improvements he created or made were to be the property of the Plaintiffs, and that further, he was obligated not to disclose or use any confidential information without consent of the Plaintiff. The contract was intended to protect the Plaintiff as a business, and pertains to ownership of things developed by Harrison during the scope of his employment while using the Plaintiff's resources and that are related to Plaintiff's business. It does not seek to transfer ownership of a "common thing." Thus, C.C. art. 449 is not applicable, and we find that the trial judge correctly interpreted the contract as simply an obligation not to do.

BREACH OF FIDUCIARY DUTY
The Defendants next assert that the trial judge erred in holding Harrison breached a fiduciary duty. The defining characteristic of a fiduciary relationship is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034, 1040 (La.1987); Scheffler v. Adams and Reese, LLP, 06-1774 (La.2/22/07), 950 So.2d 641, 647.
A fiduciary duty includes "the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests." Plaquemines Parish Commission Council, 502 So.2d at 1040.[13] "[T]he fiduciary's duty to disclose has been held paramount to the beneficiary's duty to investigate possible conflicts of interest." Id. at 1040-1041.[14] In regard to the employee-employer relationship, an employee owes a duty to his employer to be loyal and faithful to the employer's interest in business. Dufau v. Creole Eng'g, Inc., 465 So.2d 752, 758 (La.App. 5 Cir.1985), writ denied, 468 So.2d 1207 (La.1985).
A cause of action for breach of fiduciary duty requires proof of fraud, *64 breach of trust, or an action outside the limits of the fiduciary's authority. Gerdes v. Estate of Cush, 953 F.2d 201, 205 (5th Cir.1992)[15]; Beckstrom v. Parnell, 97-1200 (La.App. 1 Cir. 11/6/98), 730 So.2d 942, 947-48; Sampson v. DCI of Alexandria, 07-671 (La.App. 3 Cir. 10/31/07), 970 So.2d 55, 61.
The fiduciary duty of an employee does not end when the employment is terminated. Brown & Root, Inc. v. LaBauve, 219 F.Supp. 179, 180 (W.D.La.1962), aff'd, 319 F.2d 582 (5th Cir.1963). Although a former employee's right to compete is protected by law, the right of the existing business to fair play will be maintained. Huey T. Littleton Claims Service, Inc. v. McGuffee, 497 So.2d 790, 793 (La.App. 3 Cir.1986).
Defendants cite Creative Risk Controls, Inc. v. Brechtel, 01-1150 (La.App. 5 Cir. 4/29/03), 847 So.2d 20, 25, where we stated: "[a]s long as conduct is neither unlawful nor offensive to public policy, persons are able to ... plan to compete and take preliminary steps in furtherance of that plan." That case is distinguishable. It involved a non-competition agreement.[16]
The Plaintiff is not complaining that Harrison agreed not to compete with it. The Plaintiff argues that Harrison violated both his promise not to disclose confidential information, and his agreement that all designs and improvements made to benefit the Plaintiff during the course and scope of Harrison's employment would belong to the Plaintiff, and cannot be used for Harrison's profit without its consent. The Defendants are otherwise not precluded from competing fairly with the Plaintiff.
Based on the evidence in this case, the Plaintiff made a prima facie showing that Harrison violated his contract with the Plaintiff and breached his fiduciary duty.

INTENTIONAL TORTIOUS INTERFERENCE WITH CONTRACT
In response to the Plaintiff's claim that Bucklin tortiously interfered with the contract between the Plaintiff and Harrison, the Defendants cite 9 to 5 Fashions, Inc., v. Spurney, 538 So.2d 228 (La.1989), and Inka's S'Coolwear, Inc. v. School Time, 97-2271 (La.App. 1 Cir. 11/6/98); 725 So.2d 496, asserting that Louisiana courts only recognize a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person. Since Bucklin was not an officer for either party to the agreement between Harrison and Novelaire, and because she had no legal relationship with either party, she did not owe Novelaire or Harrison a duty not to interfere with the alleged contract.[17]
We need not address whether Bucklin tortiously interfered with contract, because the injunction simply maintains the status quo, which is its purpose. The status quo in this case is to prevent the Defendants from distributing, selling, etc. the improved dehumidifier. Nevertheless, the trial judge correctly included Bucklin *65 in the injunction. She was closely involved with Harrison in creating the modified dehumidifier and in setting up the new business under which she and Harrison operate. The injunction must extend to her; otherwise she would be able to continue selling the product, which would make the injunction meaningless. See, Lafreniere Park Found. v. Friends of Lafreniere Park, Inc., 698 So.2d at 452.
In conclusion, we find that the Plaintiff made a prima facie showing that it would prevail on the merits. Thus, the trial judge did not err in granting the preliminary injunction against the Defendants.
Accordingly, the trial judge's order granting the preliminary injunction is hereby affirmed.
Costs of appeal are to be paid by the Appellant.
AFFIRMED.
NOTES
[1] A desiccant dehumidifier is a machine that removes moisture from a stream of air using a desiccant, a material that absorbs water.
[2] These included new sheet metal casing design, a dual voltage heater, and front-mounted controls.
[3] The EHS model was designated EHS-55.
[4] This event occurred in April of 2004.
[5] The suit was filed, and the trial of the preliminary injunction was held, in East Baton Rouge Parish. Following the Defendants' appeal to the First Circuit Court of Appeal the appeal was transferred to this Court.
[6] Citing Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 04-1884 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1163, writ denied, 05-2326 (La.3/17/06); 925 So.2d 541
[7] La.R.S. 51:1405.
[8] The patent on the dehumidifier expired a few years before this action.
[9] The Louisiana unfair trade practices statute adds "unscrupulous" conduct as a basis for recovery.
[10] La.R.S. 51:1405.
[11] Common things are things that cannot be owned by anyone, and are to be used in the way nature intended. La.C.C. art. 449.
[12] La.C.C. art. 1986 states:

Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court
La.C.C. art. 1987 provides: "The obligor may be restrained from doing anything in violation of an obligation not to do."
[13] Citing Hobbs v. Eichler, 164 Cal.App.3d 174, 210 Cal.Rptr. 387, 403-404 (1985) (quoting Neel v. Magana, Olney, Levy, Cathcart and Gelfand, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971))).
[14] Citing E.F. Hutton and Co. v. Brown, 305 F.Supp. 371, 398 (S.D.Tex. 1969)).
[15] Citing Crabtree Investments, Inc. v. Merrill Lynch, Pierce, Fenner Smith, Inc., 577 F.Supp. 1466 (M.D.La.1984).
[16] This Court held in Creative Risk Controls that, actions taken before termination of employment to prepare for a competing business do not necessarily constitute a breach of fiduciary duty or an unfair trade practice. Creative Risk Controls, 847 So.2d at 24.
[17] 9 to 5 Fashions sets out very specific requirements necessary to hold a corporate officer liable for intentional interference with a contract. Although she is not a corporate officer, the Plaintiff nevertheless argues that since 9 to 5 Fashions was decided over fifteen years ago, the court should revisit the question and expand liability for tortious interference with a contract.