PATRICIA RIVET MURRAY, Judge.
| ¶ This is a suit for breach of contract, unfair trade practices, and breach of fiduciary duty. The plaintiff NovelAire Technologies, L.L.C., is a manufacturer of energy recovery and dehumidification equipment, including desiccant dehumidifiers.[1] The defendant Martin Harrison is a former NovelAire employee who worked as a designer in the engineering department for over four years until he resigned. The defendant Essential Humidity Solutions, L.L.C. (“EHS”) is a business entity that Mr. Harrison and his fiancée, Barbara Bucklin, created to compete with NovelAire in manufacturing and selling desiccant dehumidifiers. Seeking damages and injunctive relief, *915 NovelAire sued Mr. Harrison, Ms. Buck-lin, and EHS. From a judgment in Nove-lAire’s favor, Mr. Harrison, Ms. Bucklin, and EHS appeal.[2] On Ms. Bucklin’s motion, this court dismissed her appeal. For the reasons that follow, we affirm.
| .FACTUAL AND PROCEDURAL BACKGROUND
From May 1992 until June 1998, Mr. Harrison worked for AAR Corp., a defense contractor in Cadillac, Michigan. While working for AAR, he became familiar with the design of desiccant dehumidifiers, which AAR used in its defense projects. From July 1998 until January 2004 when he resigned, Mr. Harrison worked for No-velAire in Baton Rouge, Louisiana. While working for NovelAire, Mr. Harrison’s job duties included making improvements to the company’s product line. He assisted in both NovelAire’s development of a line of desiccant dehumidifiers — the DH-50— and in NovelAire’s improvement to that product line. He also introduced Nove-lAire to his former employer, AAR; and AAR became NovelAire’s sole customer for the DH-50 line.
In June 1999, NovelAire and Mr. Harrison entered into a written agreement, which provided:
2. Any and all inventions, discoveries and improvements which Employee has conceived or made, and/or may conceive or make, during the period of his said employment, relating to employer’s business or arising out of or resulting from his said employment, shall be the sole and exclusive property of Employer or its nominee.
3. Employee, whenever requested by Employer, will execute any and all instruments which Employer may deem necessary to assign and convey to it, its successors or assigns, the sole and exclusive right, title and interest in and to any such inventions, discoveries and improvements, and Letters Patent for same, or such other interests therein as Employee may possess or acquire, together with all instruments deemed necessary by Employer in order to apply for and obtain Letters Patent of the United States and/or foreign countries therefor; and Employee agrees that such obligation to execute any such instruments shall continue after the termination of his employement. All expenses of applying for and obtaining Letters Patent when authorized by Employer to be done shall be borne by it. |⅞4. Employee shall not disclose or use, directly or indirectly at any time, either during or subsequent to the said employment, any secret or confidential information, knowledge or data of Employer or of any of its affiliated companies (whether or not obtained, acquired or developed by Employee), unless he shall first secure the written consent of Employer.
The agreement further provided it was retroactive to the date on which Mr. Harrison commenced employment (the “Agreement”).
While working for NovelAire, Mr. Harrison began preparations to go into competition with NovelAire. These preparations included:
*916 • Conceiving of at least three improvements to the DH-50 line — (1) a sheet metal housing, (2) a dual voltage heater, and (3) a center-mounted control— and failing to disclose these improvements to NovelAire;
• Using his computer at NovelAire to work on a drawing for the new sheet metal housing design;
• Employing the assistance of another NovelAire employee and using the company’s equipment to punch out parts for a prototype of the improved sheet metal housing design;
• E-mailing Ms. Bucklin and a friend who worked at AAR regarding possible names for his new business;
• Disclosing to AAR some or all of his conceived improvements;
• Talking with vendors, including Nove-lAire’s vendors, about sourcing components for his improved dehumidifier;
• Ordering one hundred circuit boards from one of NovelAire’s vendors to use in his improved dehumidifier; and
• Copying NovelAire’s DH-50 dehumidifier manual onto his home computer for subsequent use as a template for a manual for his improved dehumidifier.
On January 23, 2004, Mr. Harrison resigned. (NovelAire paid him through February 6, 2004.) On January 30, 2004, No-velAire informed Mr. Harrison by letter of its concerns that he had breached his fiduciary duties and engaged in unfair trade practices. According to the letter, Nove-laire was aware that, while |4working for the company and on company time, Mr. Harrison used company materials, resources, and equipment to develop secretly an improved desiccant dehumidifier design without reporting this to NovelAire. The letter further informed him that NovelAire was also aware that Mr. Harrison had shared this improvement with NovelAire’s customer and that he had sent the customer “at least one proprietary drawing of the company” without informing NovelAire. The letter admonished Mr. Harrison that NovelAire would seek legal remedies if he attempted to sell his improved desiccant dehumidifier to NovelAire’s customer.
On February 5, 2004, Mr. Harrison and Ms. Bucklin formed EHS. Shortly thereafter, Mr. Harrison, through EHS, began manufacturing and selling his improved desiccant dehumidifier line — the EHS-55 — to AAR. The price EHS charged AAR for the EHS-55 line was between one hundred to four hundred dollars less than the price that NovelAire charged AAR for the DH-50 line.
On June 9, 2004, NovelAire commenced this suit asserting the following causes of action: (i) as to Mr. Harrison, breach of contract, breach of fiduciary duty, and unfair trade practice; (ii) as to Ms. Bucklin, unfair trade practice and intentional interference with contract; and (iii) as to EHS, unfair trade practice. NovelAire sought not only damages, but also injunctive relief prohibiting the Harrison Defendants from marketing, designing, distributing, manufacturing, or selling a desiccant dehumidifier based on the NovelAire DH-50.
In July 2007, a hearing was held on the preliminary injunction at which several witnesses testified and documentary evidence was introduced. The trial court found that Mr. Harrison conceived of at least three improvements to the DH-50 during the time that he was employed by NovelAire: (1) the sheet metal housing, (2) the dual voltage heater, and (3) the center-mounted control. The trial | ¡¡court also found that Mr. Harrison failed to disclose these improvements to NovelAire; instead, he took the improvements and utilized them for his own profit. The trial court determined that Mr. Harrison’s actions violated not only the Agreement, but also his *917 fiduciary duty to his former employer. The trial court further determined that a showing of irreparable harm was unnecessary for issuing the preliminary injunction under La. C.C. art. 1987, which provides that “[t]he obligor may be restrained from doing anything in violation of an obligation not to do.” The trial court still further determined that NovelAire had made a strong showing that it would succeed at trial on the merits. The trial court thus granted a preliminary injunction enjoining all the defendants from:
(i) “designing, manufacturing, marketing, distributing, or selling ... a desiccant dehumidifier based upon the design of the NovelAire DH-50 desiccant dehumidifier, including, but not limited to, the Essential Humidity Solutions EHS-55 desiccant dehumidifier;” and
(ii) “disclosing to any third party any improvements to the NovelAire DH-50 desiccant dehumidifier, including, but not limited to, any improvements embodied in the EHS-55 desiccant dehumidifier.”
In Novelaire Technologies, L.L.C. v. Harrison, 08-157 (La.App. 5 Cir. 8/19/08), 994 So.2d 57 (“Novelaire I”), the appellate court affirmed the trial court’s decision granting the preliminary injunction.[3]
On January 5, 2009, the trial was held on the merits of NovelAire’s request for permanent injunctive relief and damages. At trial, the parties stipulated to the introduction of the record from the preliminary injunction hearing. The parties further stipulated that the Harrison Defendants’ actions caused NovelAire to be injured and that NovelAire lost profits as the result of their actions in the amount of | r,$691,598.27. This figure represented the sale by EHS to AAR of 927 desiccant dehumidifiers (EHS-55 units). This figure was calculated based on the assumption that AAR would have purchased the units (DH-50 instead of EHS-55 units) from NovelAire at a total sales price of $1,435,970. Based on NovelAire’s historic pricing and production costs, the loss profit was calculated to be $691,598.27, the stipulated amount. The parties still further stipulated to the determination of attorney’s fees.
Following the trial on the merits, the trial court rendered judgment in Nove-lAire’s favor awarding $691,598.27 in damages plus judicial interest from the date of judicial demand; $625,872.75 in attorneys’ fees plus judicial interest from the date of judgment; and all costs of the action. The trial court also ordered that a permanent injunction issue in the same form and in the same scope (quoted above) as the preliminary injunction. This appeal followed.[4]
DISCUSSION
A trial court’s decision granting a permanent injunction is reviewed under a manifest error standard. Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220, p. 9 (La.4/14/04), 875 So.2d 22, 29; Foret v. Terrebone, Ltd., 93-676 (La.App. 5 Cir. 1/25/94), 631 So.2d 103, 105. Legal errors are reviewed under a de novo standard. Audubon Orthopedic and Sports Medicine, APMC v. Lafayette Ins. Co., 09-0007, *918 p. 19, n. 11 (4/21/10), 38 So.3d 963, 977. Damage awards for breach of contract are reviewed under an abuse of discretion standard. Id., 09-0007 at p. 25, 38 So.3d at 980.
|7On appeal, the Harrison Defendants contend the trial court erred in three respects: (i) upholding a contract that prevents Mr. Harrison from exercising a lawful profession that has neither geographic nor temporal restrictions — invalid non-compete contract; (ii) precluding them from using technology which is, under federal law, in the public domain — federal preemption; and (iii) issuing a vague and overly broad injunction — invalid injunction.[5] We separately address each of these arguments.
(i) Invalid non-compete contract
The Harrison Defendants contend that the Agreement, as interpreted by the trial court, prevents Mr. Harrison from exercising a lawful profession — manufacturing and selling dehumidifiers. They contend that an agreement that prevents a former employee from exercising a lawful profession is a non-compete contract under La. R.S. 23:921, which provides that “[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.” La. R.S. 23:921 A(l). Under this statute, a non-compete contract is only valid if it meets the geographic and temporal limitations set forth in La. R.S. 23:921 C, which imposes a limit to the specific parish (or parishes) the employer carries on a like business and a time limit of two years from the termination of employment. Since the Agreement contains neither a geographic nor a temporal limit, the Harrison Defendants contend it is null.
NovelAire replies that this issue was addressed by the Fifth Circuit in its earlier decision in this case. Concluding that the Agreement is not an invalid non-hcompete contract within the meaning of La. R.S. 23:921, the Fifth Circuit reasoned:
The Defendants are not precluded from operating a business selling dehumidifiers. Harrison is simply precluded under the contract from using any improvements or designs he made while working for the Plaintiff, and from disclosing or using the Plaintiffs confidential information for his own profit without consent of the Plaintiff. Thus, the non-competition statute is inapplicable here.
Novelaire I, 08-157 at p. 6, 994 So.2d at 61. NoveLAire also points out that the Harrison Defendants’ argument is not based on the language of the Agreement itself, but rather on the remedial provisions of the injunction. By its terms, the Agreement does not restrain Mr. Harrison from engaging in a lawful profession. Rather, NovelAire contends that the Agreement is a standard contract to provide for the ownership, as between an employer and an employee, of discoveries the employee made while working for the employer, and to keep those discoveries confidential. NovelAire contends that neither of these contractual requirements constitute non-compete contracts. We agree.
An employer may require an employee not to disclose confidential information. “Confidentiality agreements have been held enforceable and not subject to the prohibition (and requirements) of La. *919 R.S. 23:921.” Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329, 334, n. 15 (La.App. 1st Cir.1984); see also Rick J. Norman, Louisiana Prac. Employment Law § 14:14 (2009 ed.)(noting that “[a]n employee who contracts to keep his employer’s business confidential is liable to his employer for breach of that agreement even though the confidential information might not technically constitute trade secrets.”) A confidentiality agreement unlike a covenant not to compete “cannot be challenged as an unreasonable restraint of trade.” 2 Louis Altman and Malla Pollack, \c,Callmann on Unfair Competition, Trademarks and Monopolies § 14:6 (4th ed. 2010)(“Callmann”).
An employer also “may require the employee to disclose and assign his inventions to the employer; this is the usual practice in U.S. technology companies.” Callmann, supra at § 14:17. This type of employee-invention assignment agreement — contractual requirement than an employee’s inventions or improvements made during the employment shall be the property of the employer — is “not a covenant not to compete, does not limit the employee’s post-employment activities except with respect to the affected inventions and improvements, and is not subject to the limitations and requirements applicable to covenants not to compete.” Call-mann, supra (citing Novelaire I, supra).
Summarizing, neither the requirement that Mr. Harrison disclose to NovelAire his discoveries, nor the requirement that he not disclose confidential information constitute a non-compete contract governed by La. R.S. 23:921.
(ii) Federal preemption
The Harrison Defendants contend that both NovelAire’s breach of contract and unfair trade practice act claims against it are preempted by federal patent law.[6] We separately address each claim.
Insofar as NovelAire’s breach of contract claim, the Harrison Defendants focus on the provision in the Agreement that all the technology Mr. Harrison developed while employed shall be NovelAire’s “sole and exclusive property.” The Harrison Defendants contend that this provision can only apply to items susceptible to private ownership. Things in the public domain— in civil law | interminology, common things[7] —are insusceptible to private ownership. Contracts cannot create ownership rights in things in the public domain. In support of their public domain argument, the Harrison Defendants cite absolutist language in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), that “[a]n unpatentable article, like an article on which the patent has expired is in the public domain and may be made and sold by whoever chooses to do so.” Id.
The relevance of the public domain doctrine in this case, according to the Harrison Defendants, is that the technology in NovelAire’s DH-50 line (with the exception of its desiccant wheel) is not patented and thus is in the public domain. According to the Harrison Defendants, a third party long ago patented the dehumidifier technology on which NovelAire’s DH-50 line is based, and the patent has expired. The technology is therefore in the public domain. The only technology NovelAire *920 added is an improved desiccant wheel on which NovelAire has a patent. Mr. Harrison did not use NovelAire’s patented wheel; rather, he purposefully selected a product (wheel) from another vendor so as not to infringe on NovelAire’s patent. The dehumidifier technology in the DH-50 line is easily susceptible of being reversed-engineered by anyone with knowledge in the field. Indeed, NovelAire’s DH-50 line was developed by reverse-engineering a competitor’s older unit.[8] The Harrison Defendants thus contend that the Agreement, to the extent it provides for NovelAire’s ownership of the technology in its DH-50 line, is null.
I,insofar as NovelAire’s unfair trade practice claim, the Harrison Defendants contend that this claim is preempted because state laws cannot “be used to prohibit a member of the public from making and selling such items” in the public domain. Stated otherwise, they contend that state laws cannot create patent-like protection for an article that is in the public domain. In support, they cite Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 164, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989), in which the Supreme Court held that a Florida statute criminalizing the reverse-engineering of another company’s product conflicted with established patent law that allows a person to reproduce a product that is in the public domain and unprotected by a patent. Particularly, they quote the language that “[s]tates may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law.” Bonito Boats, 489 U.S. at 156-57, 109 S.Ct. 971. The Harrison Defendants acknowledge that the Supreme Court has ruled that, in certain cases, patent law does not necessarily preempt state unfair competition law; however, they contend that the Supreme Court has differentiated between the traditional unfair trade practice laws— which focus on protecting consumers not competing manufacturers — and new causes of action that states may create.
The public domain concept on which the Harrison Defendants rely is a “question-begging legal concept.” Mine Safety Appliances Co. v. Electric Storage Battery Co., 56 C.C.P.A. 863, 405 F.2d 901, 902 (Cust. & Pat.App.1969). “Whether or not things are in or out of the public domain and free or not free to be copied may depend on all sorts of legal concepts including patent law, antimonopoly policy and statutes, the law of unfair competition, copyright law, and the law of trademarks and trademark registration.” Id. Based on a judicial determination of the legal rights at issue, courts “express the ultimate conclusion by saying something is in the ‘public |12domain’ — or not in it.” Id.; see also Reingold v. Swiftships, Inc., 126 F.3d 645, 652 (5th Cir.1997)(noting that “[mjatter is in the public domain only if no intellectual property law, such as patent, copy right, or trade secrets, protect it.”) Simply put, the public domain concept is a legal conclusion.
As noted earlier, the Harrison Defendants cite in support of their public domain argument the Supreme Court’s absolutist language in the Sears case that anyone can make and sell an unpatented item. However, the Supreme Court, in the subsequent Bonito Boats case, clarified that “while Sears speaks in absolutist terms, its conclusion that the States may place some conditions on the use of trade dress indicates an implicit recognition that all state regulation of potentially patentable but un- *921 patented subject matter is not ipso facto pre-empted by the federal patent law.” Bonito Boats, 489 U.S. at 154, 109 S.Ct. 971. Continuing, the Supreme Court pointed out that it made this ruling express in its subsequent decision in Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), which held that “state protection of trade secrets' did not operate to frustrate the achievement of the congressional objectives served by the patent laws.” Bonito Boats, 489 U.S. at 155, 109 S.Ct. 971. The Supreme Court further pointed out that it had “since reaffirmed the pragmatic approach which Kewanee takes to the preemption of state laws dealing with the protection of intellectual property.” Bonito Boats, 489 U.S. at 156, 109 S.Ct. 971 (citing Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979)).
Although Bonito Boats held that a state cannot enforce a statute that provides patent-like protection to patented or unpatented devices, the Supreme Court in Bonito Boats reaffirmed its holding in Kewanee that federal patent law does not preempt state unfair trade practice laws. See Reingold, 126 F.3d at 652, n. 2. No-velAire’s state law claims are closer to the trade secret law sought to be | ^enforced in Kewanee Oil than the Florida statute struck down based on preemption in Bonito Boats. As the Fifth Circuit in Novelaire I noted, the state unfair trade practice law at issue in this case is distinguishable from the criminal law at issue in Bonito Boats prohibiting the reverse engineering of another company’s product. “Here, the claim under the unfair trade practices statute is that the Defendants allegedly acted in concert to violate the contract and breach the trust of the Plaintiff by using its resources to develop the improvements that then allowed them to compete with the Plaintiff for, and obtain, the business of its only customer for that product.” Novelaire I, 08-157 at p. 7, 994 So.2d at 62. As the court in Novelaire I concluded, “[t]here is no conflict between the federal and state laws in this case.” Id., 08-157 at p. 8, 994 So.2d at 62.
Summarizing, the Harrison Defendants’ liability in this case stems from two sources. First, Mr. Harrison breached the Agreement requiring him to disclose developments he made while employed at Nove-lAire. This type of employee-invention assignment agreement is not inconsistent with federal patent law and thus is not preempted. Callmann, supra at § 14:20. Second, Mr. Harrison breached his contractual and fiduciary duties not to disclose NovelAire’s confidential information. In so doing, he also violated the state unfair trade practice law. This aspect of Nove-lAire’s claim stems from Mr. Harrison’s “less than savory business practices rather than [his] ... reliance on public domain sources of information. This is not the stuff of preemption.” Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 559 F.3d 1, 3 (1st Cir.), reh’g denied, 552 F.3d 47 (1st Cir.2009)(rejecting the defendant’s patent preemption argument in denying rehearing in a trade secrets misappropriation and unjust enrichment case). Moreover, “the Supreme Court has suggested that states should 1 ucontinue to regulate just these sorts of less-than-upright business practices even if they incidentally involve intellectual property and information that may be subject to federal patent law.” Id. (citing Bonito Boats, supra.). Thus, the Harrison Defendants’ reliance on federal patent preemption is misplaced.
(iii) Invalid injunction
The Harrison Defendants final contention is that the permanent injunction *922 issued in this case is vague and overly broad. The vagueness of the injunction, they contend, is that it fails to describe the design elements of a dehumidifier that Mr. Harrison is prohibited from using. The controlling law regarding the scope of an injunction is La. C.C.P. art. 3605, which provides that an order granting injunctive relief “shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained.” The permanent injunction in this case provides that Mr. Harrison is prohibited from designing, making, or selling “a desiccant dehumidifier based upon the design of the NovelAire DH-50 desiccant dehumidifier, including, but not limited to, the Essential Humidity Solutions EHS-55 desiccant dehumidifier.”[9] We find, as NovelAire contends, that the injunction is not vague as it outlines in reasonable detail the prohibited conduct without referring to the petition or any documents.
The Harrison Defendants also contend that the injunction is overly broad because it effectively deprives Mr. Harrison of the ability to work in his field — the manufacture and sale of dehumidifiers. We disagree. Mr. Harrison is not prohibited from working at his trade. Rather, as NovelAire points out, he is only | ^prohibited from “designing, making, or selling a dehumidifier that is based upon NovelAire’s custom-made DH-50 dehumidifier, including the dehumidifier that EHS was selling, which incorporated certain improvements to NovelAire’s DH-50 dehumidifier that [Mr.] Harrison had discovered.” He is also prohibited from disclosing any confidential information he obtained from NovelAire, without its permission. The injunction thus only prohibits him from engaging in conduct that would violate the Agreement. Accordingly, the scope of the injunction is not overly broad.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed. The costs of the appeal are assessed against the appellants, Mr. Harrison and EHS.
AFFIRMED.

. A desiccant is a substance used to absorb water or moisture, and a desiccant dehumidifier is a machine that uses a desiccant to remove moisture from a stream of air. As one of the witnesses at trial further explained, "desiccant dehumidification is just dehumidi-fication that usually has two counter-flow air streams that are rotating or some other mechanism for putting desiccants in the two air streams. In one stream, the water is removed usually by heat or low relative humidity air. In the other stream, the water is absorbed from a higher relative humidity stream.”

. While the appeal was pending, Ms. Bucklin filed for bankruptcy. As part of a settlement in the bankruptcy proceeding, she filed a motion to voluntarily dismiss her appeal, which this court granted. Thus, the claims against her — intentional interference with contract and unfair trade practice — are not before us on appeal. The only defendants before us on appeal are Mr. Harrison and EHS (the “Harrison Defendants.”)

. Although the suit was filed in East Baton Rouge Parish (the Nineteenth Judicial District Court) and the trial on the preliminary injunction was held there, the First Circuit Court of Appeal en banc recused itself. The Louisiana Supreme Court appointed the Fifth Circuit Court of Appeal to decide the appeal of the preliminary injunction.

. Because the First Circuit Court of Appeal en banc recused itself from this case, the Louisiana Supreme Court appointed this court (the Fourth Circuit Court of Appeal) to decide the instant appeal.

. Although the Harrison Defendants also assign as error the trial court’s assessment of damages against Ms. Bucklin, this assignment of error is moot given Ms. Bucklin’s dismissal of her appeal.

. Because the Harrison Defendants did not assign as error the trial court’s finding that Mr. Harrison breached his fiduciary duty, we do not address that claim.

. Common things cannot be owned by anyone; "[t]hey are such as the air and the high seas that may be freely used by everyone comformably with the use for which nature has intended.” La. C.C. art. 449.

. Reverse-engineering refers to "[t]he process of discovering how an invention works by inspecting and studying it, esp. by taking it apart in order to learn how it works and how to copy it and improve it.” Bryan A. Garner, Black's Law Dictionary 1345 (8th ed.2004).

. As noted elsewhere, the permanent injunction further provides that Mr. Harrison is prohibited from: "disclosing to any third party any improvements to the NovelAire DH-50 desiccant dehumidifier, including, but not limited to, any improvements embodied in the EHS-55 desiccant dehumidifier.”