CARAWAY, J.
| TThe plaintiff retailer/installer of granite filed suit for trade name infringement against a competing business incorporated by a former employee. Plaintiff seeks to enjoin defendant’s use of plaintiffs trade names. Following a preliminary injunction hearing, the trial court enjoined defendant from using, displaying or advertising the trade names of plaintiff. This appeal by defendant ensued.

Facts

In December of 2004, David Randall Cook incorporated a retail granite business specializing in granite countertops, called Louisiana Granite Yard, Inc. (hereinafter LGY).[1] Cook’s wife, Somsri, operated a restaurant next door to Louisiana Granite Yard. From June of 2005 to February of 2008, Somsri’s brother, Sompong Sitkrong-wong (“Mark”), began working for the two businesses. While working at LGY, Mark met with customers, answered phones, took payments, performed computer input, measured jobs and created computer drawings.
In mid-February 2008, Cook terminated Mark’s employment. Subsequently in late February 2008, Mark incorporated his own granite business calling it LA Granite Countertops, L.L.C. (“LA Countertops”).[2] Initially, Mark utilized his home address as the business address. On March 31, 2008, however, he changed the business address after he secured leased premises some 4.3 miles from LGY.
|2In September and October of 2008, the Louisiana Secretary of State approved LA Granite and Louisiana Granite as trade names for Cook’s business. Based upon allegations that Mark was utilizing LGY’s trade names (LA Granite and Louisiana Granite), LGY instituted suit for trade name infringement against LA Counter-tops on November 3, 2008. LGY alleged that LA Countertops used its “trade names, LA Granite and Louisiana Granite, in its day to day business activities,” and that the use of its trade names caused “actual confusion, mistake and/or deeep *577 tion” to LGY clients. Specifically, plaintiff alleged LA Countertops was receiving payment in the name of LA Granite and answered the phone using both trade names. In a supplemental petition, LGY also raised claims of unfair trade practices and alleged that the name LA Granite Coun-tertops, L.L.C., caused confusion to the public. Alleging that such activity was likely to injure the business reputation of LGY and dilute its business market, LGY prayed for injunctive relief under La. R.S. 51:222, et seq., relating to the use of the names and telephone numbers and damages and attorney fees. LA Countertops answered the suit and filed a reeonventional demand against LGY seeking the cancellation of the trade names Louisiana Granite and LA Granite.
On September 28, 2009, the trial court conducted a hearing on LGY’s motion for preliminary examination. At the hearing, Cook, his wife, Somsri, and Mark testified in addition to numerous customers of the two businesses. Specifically, LGY presented the testimony of three customers who were confused about the names of the two businesses.
|sMeIanie Petchak testified that in August of 2008 she purchased granite from LGY. Because of a change order, she tried to contact LGY. She looked in the phone book for the telephone number and called LA Countertops instead. Petchak testified that she was confused over the names of the two companies. On cross-examination, the witness admitted that she did not compare addresses before she called. She knew the name of LGY as Louisiana Granite.
Diana Roath also testified that she purchased granite from LGY. When she and her husband attempted to locate LGY, they were unable to find it. She called a number from a 2007 newspaper ad. The individual who answered the phone identified the business as LA Granite and gave her directions to LGY. She asked the person who answered the phone if she had reached “Louisiana Granite” and he said responded that the business was LA Granite. She asked if LA stood for Louisiana and he responded in the negative. Roath’s husband, Terry Roath, testified consistently with his wife.
Diane Cook, Cook’s sister, testified the she had worked for LGY answering the phone. When answering the phone, she utilized the names LA Granite, Louisiana Granite and Louisiana Granite Yard. Cook estimated that she received at least two “confused” customer calls per week. She also testified that she called LA Counter-tops and heard that they answered the phone under the name LA Granite.
Mark testified that he could not recall whether he referred to LGY as LA Granite or Louisiana Granite during the time he worked for his brother-in-law. Later, Mark testified that he had referred to the business as Louisiana Granite Yard, but not LA Granite Yard. Mark identified documents he prepared for a client which were entitled LA Granite Yard, but he claimed that he did not notice the details of the document. He later testified that he put the name LA Granite Yard on the documents at the request of Cook. Mark identified 34 documents including price quotes, drawings, bills, checks and deposit slips from November 2005 to February 2008, containing the names LA Granite, Louisiana Granite or Louisiana Granite Yard.
Mark testified that he never recalled customers referring to the business as LA Granite Yard or LA Granite. Nor did he answer the phone with LA Granite. Mark recalled Petchak’s phone call and admitted that he had called his sister concerning Petchak’s inquiry.
*578 Mark testified that he never held his business out as LA Granite or Louisiana Granite. He advertised his company in newspapers and the phone book utilizing the full name, “LA Granite Countertops.” He never instructed his clients to make checks payable to LA Granite, although he identified four checks which were made payable to LA Granite. Mark also identified numerous corporate documents which included the entire name of his company.
Somsri Cook testified that the names, LA Granite, Louisiana Granite and Louisiana Granite Yard were used to refer to LGY from the company’s inception in 2005. She identified approximately 250 pages of copies of checks and deposit slips dated June of 2005-September of 2008, made out to LLA Granite Yard, Louisiana Granite Yard, LA Granite, Louisiana Granite, La. Granite and La. Granite Yard. She knew that during his employment, Mark answered the business phone as LA Granite or Louisiana Granite.
In July of 2008, one of Mark’s customers mistakenly brought in a payment check to LGY. It was written to “LA Granite.” Somsri also testified that in July of 2009, a granite supplier sent a facsimile to LGY with the name of LA Countertops relating to an order made by LGY. A business card vendor also erroneously left a voice message at LGY for LA Countertops. In August and September of 2008 two LGY customers erroneously called LA Counter-tops to change LGY orders. Somsri testified that customers called her with confusion over the two company names. Somsri identified the sign which was presently in front of LGY which read LA. Granite, Yrd. She testified that the sign had been used by the business since late 2005. A photograph of the sign was introduced into evidence.
On cross-examination Somsri identified the phone book ads of LGY which advertised the company as Louisiana Granite Yard. Defendants submitted telephone book ads for both businesses dating from 2007-2010. Both businesses were listed on the same pages in the 2009-2010 phone book under the headings Counter Tops and Granite, under their respective names, Louisiana Granite Yard and LA Granite Countertops.
David Cook testified that he has tried to establish the business identity of his company with the names Louisiana Granite and LA Granite. He identified the sign in front of the business which he recalled had been there since May of 2005. Cook testified that LGY does business in 1 (¡Shreveport, Bossier City and Webster Parish. Cook recalled that the LGY phone was answered with Louisiana Granite and LA Granite, although LA Granite was primarily used. He also testified that Mark answered the telephone LA Granite when he worked for LGY. Cook noticed that the incidents of confusion increased when both companies were listed in the telephone book.
After considering the evidence and testimony, the trial court granted a preliminary injunction in favor of LGY, as follows:
[Restraining, enjoining, and prohibiting said entity, its owners, agents, employees, and all persons, firms or corporations acting or claiming to act in its behalf, or in concert with said entity from using, displaying, advertising, and/or referring to in any manner and/or capacity the trade names of “LOUISIANA GRANITE” and/or “LA GRANITE” and, more specifically, from using the “LA GRANITE” within the name of the defendant, LA GRANITE COUN-TERTOPS, L.L.C.
The court fixed a $20,000 bond and denied enjoining the use of LA Countertops’ telephone number. LA Countertops appeals the issuance of the preliminary in *579 junction and, alternatively, contests the amount of the bond.

Discussion

I. Merits of Preliminary Injunction
In Louisiana, an entity’s corporate name registered under Title 12, the Louisiana Corporations and Associations Law, shall be distinguishable from the name of any corporation or other limited liability company or trade name previously registered with the secretary of state under La. R.S. 12:23B and 1306A(3). Likewise trade names can be registered pursuant to Title 51, Chapter 1, Part IV, Trade Names, Trade Marks and Domain |7Names, if the Secretary of State finds that the trade name is available for use. La. R.S. 51:213, 215. Under those provisions, the term “trade name” means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others. La. R.S. 5L211D. The term trade name is applicable to the particular business and its good will. Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 94-2203 (La.4/10/95), 652 So.2d 1306.
Under Louisiana law, however, the mere registration of a the trade name confers only procedural advantages.[3] Substantive rights in a trade name may be acquired only by actual usage. Bobby and Ray Williams Partnership, L.L.P., v. Shreveport Louisiana Hayride Co., L.L.C., 38,866 (La.App.2d Cir.9/22/04), 882 So.2d 676; Givens Jewelers, Inc. v. Givens, 380 So.2d 1227 (La.App. 2d Cir.1980), writ denied, 383 So.2d 800 (La.1980); Couhig’s Pestaway Co., supra; Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4th Cir.1962). This is because the protection of trademarks and trade names under the law of unfair competition is based on the proprietary interest one has in the mark or name and such protection is based on equity and does not require statutory provisions. Gulf Coast Bank, supra at 1311-1312. Thus, the registration by one party, or the lack of registration by the other, is not decisive to the right 18of either party to use the trademark or trade name. Couhig’s Pestaway Co., supra.
The Louisiana Supreme court has sanctioned a cause of action for trade name infringement. Because, however, that cause of action is not “existent in the statutory scheme,”[4] it exists in the “jurispru-dentially developing law of trade names as part of the law of unfair competition.” Gulf Coast Bank, supra at 1312.
The law of unfair competition protects trade names against unfair use, sim *580 ulation, or imitation. New Orleans Checker Cabs v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944); Boogie Kings v. Guillory, 188 So.2d 445 (La.App. 3d Cir.1966), writ denied, 249 La. 761, 191 So.2d 140 (1966). In the context of trademarks, which are accorded the same protections as trade names, the Louisiana Supreme Court long ago discussed the law of unfair competition in Handy v. Commander, 49 La. Ann. 1119, 22 So. 230 (1897):
The law applicable to trade-marks is very well stated in Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550, in which Mr. Justice Miller, speaking for the court, said: ‘The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the chancery courts of England and of this country, and by the statutes of some of the states. It is a property right, for the violation of which damages may be recovered in an action at law, and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement. This exclusive right was not created by the act of congress, and does not depend upon it for its enforcement. The whole system of trade-mark | nproperty, and the civil remedies for its protection, existed long anterior to that act, and have remained in full force since its passage. These propositions are so well understood as to require neither the citation of authorities nor elaborate argument to prove them.’
The court further stated:
The trade-mark may be, and generally is, the adoption of something already in existence as the distinctive symbol of the party using it. At common law the exclusive right to it grows out of its use, and not its mere adoption.
The law’s protection against unfair competition by the use bf another’s trade name rests upon the deceit or fraud which the newcomer in the business practices, not only upon the one already established in the business, but also upon the public. Boogie Kings, supra.
Whether there has been a trade name infringement centers upon the distinctiveness of the name used. Trade names are often classified in categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); Gulf Coast Bank, supra.
The general rule regarding distinctiveness is clear. An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning. Two Pesos, Inc., supra. Secondary meaning is used generally to indicate that a mark or dress has come through use to be uniquely associated with a particular manufacturer’s product or service. To establish secondary meaning, a plaintiff must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the |;nproduct rather than the product itself. Id. Louisiana courts have looked to the appearanqe and actual similarity of the name or marks, evidence of actual confusion, as well as actual fraudulent intent, and the geographic area in which the businesses operate in relation to each other. Gulf Coast Bank, supra. Other factors which are appropriately considered by the courts are similarity of product, identity of retail outlets and purchasers, identity of advertising media, strength or distinctiveness of the mark or *581 name, defendant’s intent and similarity of design Id.
A generic term is the name of a particular genus or class of which an individual article, service or business is but a member. Generic terms are considered to be in the public domain and are not susceptible to appropriation for exclusive use and thus are not given trademark or trade name protection.
A suggestive term suggests, rather than describes, a characteristic of the goods, services or business and requires an effort of the imagination by the consumer in order to draw a conclusion as to the nature of the goods, services, or business. Suggestive marks or names are considered inherently distinctive and need not acquire secondary meaning to be protected. Arbitrary or fanciful terms bear no relationship to the product, service or business to which it applies, and like suggestive ones, are considered inherently distinctive and are accorded protection without having to prove secondary meaning. Gulf Coast Bank, supra.
Descriptive terms identify a characteristic or quality of an article, service or business. Though ordinarily not protectable, a descriptive name |nmay become a valid, protectable trade name if it acquires a secondary meaning. Included in the category of descriptive terms which must have secondary meaning in order to be afforded protection as a trade name are geographic terms. Gulf Coast Bank, supra.
An injunction is a harsh, drastic, and extraordinary remedy, and should issue only where the party seeking it is threatened with irreparable loss or injury without adequate remedy at law. Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (La.1969), cert. denied, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Lafreniere Park Foundation v. Friends of Lafreniere Park, Inc., 97-152 (La.App. 5th Cir.7/29/97), 698 So.2d 449, writ denied, 97-2196 (La.11/21/97), 703 So.2d 1312. A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Lafreniere Park Foundation, supra. The trial court has great discretion to grant or deny the relief. Id.
La. C.C.P. art. 3601 provides in pertinent part that, an injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law. Clearly, absent specific authorization by law, an injunction will not issue without a showing of irreparable injury. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1967); Lafreniere Park Foundation, supra.
In order to obtain a preliminary injunction a plaintiff must show that he will suffer irreparable harm if the injunction is not granted, that he is entitled to the relief sought, and he must make a prima facie showing that he | ^will prevail on the merits. Lafreniere Park Foundation, supra. In contrast, the issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence. Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220 (La.4/14/04), 875 So.2d 22. Thus, because an applicant for a preliminary injunction need make only a prima facie showing, less proof is required that in an ordinary proceeding for a permanent injunction. Gaumnitz v. Williamson, 36,177 (La.App.2d Cir.8/14/02), 824 So.2d 531; Monroe Real Estate & Dev’t Co. v. Sunshine Equipment Co., 35,555 (La.App.2d Cir.1/23/02), 805 So.2d 1200; *582 Hailey v. Panno, 472 So.2d 97 (La.App. 5th Cir.1985).
For purposes of determining whether preliminary injunction is warranted, “irreparable injury” means that the moving party cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards. Lafreniere Park Foundation, supra. Where one relies on secondary meaning to establish the distinctiveness of the name, in order to enjoin another’s use of a similar name, proof of a likelihood of consumer confusion is required. Gulf Coast Bank, supra.
In this case, the sequence of the corporate name actions by the Secretary of State for the key phrases “Louisiana Granite” and “LA Granite” was, as follows:
December 2004 — Corporate name issuance to
“Louisiana Granite Yard, Inc.”
February 2008-Corporate name issuance to
“LA Granite Countertops, L.L.C.”
| tsSeptember/October 2008 — Approval of LGY’s trade name use for
“LA Granite” and “Louisiana Granite”
Thus, if approval by the Secretary of State was the controlling test for a resolution of this case, LGY first obtained formal use of the phrase “Louisiana Granite,” and LA Countertops first received approval for use of the phrase “LA Granite” in connection with their respective business entities. However, contrary to LA Countertops’ assertions, the Secretary of State’s actions do not resolve this dispute as shown by the above jurisprudence.
Despite the concluding terms “yard” and “countertops” in the respective names of the parties’ business entities, LGY claims that defendant’s choice of the principal component of its name, “LA Granite,” and'the defendant’s use of that name and the name “Louisiana Granite,” create an infringement upon the distinctiveness and use of “Louisiana Granite” in LGY’s name and business. Clearly, LGY’s appropriation of “Louisiana Granite” within its formal corporate name and its use of that phrase in its business name and operations since 2004 justifies the preliminary injunctive relief preventing LA Counter-tops’ use of “Louisiana Granite” as a business trade name. The phrase has its own distinctiveness and had acquired secondary meaning by its use in the Shreveport/Bossier market. LA Countertops was shown to have employed the phrase “Louisiana Granite” at times in conducting its business, and the above jurisprudence supports the affirmance of the trial court’s injunction against the defendant concerning the use of that phrase.
|14A closer issue is presented regarding the defendant’s use of the key phrase, “LA Granite,” as its trade name. First, the established use of “Louisiana Granite” by LGY involves a name identifying a “granite” business (a generic concept) with “Louisiana,” a formal descriptive name, geographically identifying the business as located in our state. As stated above, there is a distinctiveness in the combination of those words as “Louisiana Granite” and a clear secondary meaning for this phrase as a business trade name used by LGY since 2004. Although the defendant’s use of the capitalized letters “L” and “A” can be pronounced and communicated as “L” and “A,” the Louisiana customer might also easily interpret “LA Granite” as the same as “Louisiana Granite,” since “La.” is the abbreviation for our state name. Thus, there is some confusion in the words alone created by the defendant’s choice of the name “LA Granite.”
Secondly, LGY produced prima facie evidence of its prior trade name use of “LA *583 Granite” and thus distinctiveness through secondary meaning which LGY had obtained in the marketplace prior to the formation of LA Countertops. The evidence reviewed above consisting of the name plate on the outside of LGYs place of business and the use of “LA Granite” in the business is admittedly not so overwhelming. However, this was evidence of a secondary meaning which was not clearly rebutted by defendant. The higher burden of proof for a permanent injunction might produce a different outcome. Yet, at the preliminary injunction stage, the confusion caused by the abbreviation of the state name and the direct employment of the trade name “LA Granite” by LGY in the marketplace prior to LA Countertops’ | ^formation, provided the trial court with sufficient evidence for the grant of injunc-tive relief.
Finally, although the two formal corporate names are distinguished by the words “Countertops” and ‘Yard,” the primary name component of each business involves Louisiana Granite. The defendant’s infringement on LGY’s established use of its trade name for that key component may be presently enjoined during the pendency of this action.
II. Insufficiency of Bond
On appeal, Mark argues that the $20,000 preliminary injunction bond set by the trial court in accordance with La. C.C.P. art. 3610[5] should be increased to not less than $80,000. In oral reasons for judgment, after granting the preliminary injunction in favor of LGY, the trial court set the bond at $20,000. No oral objection to the amount was made by counsel at that time. A written judgment memorializing the ruling followed on November 3, 2009. Without any further objection by Mark, LGY obtained an order from the court for the placement of the cash bond into the registry of the court.
It is well established that the amount of the preliminary injunction bond addresses itself to the discretion of the trial court. Hall v. Fertility Institute of New Orleans, 94-1135 (La.App. 4th Cir.12/15/94), 647 So.2d 1348. Moreover, La. C.C. P. art. 5123 requires any person in interest | ^wishing to test the sufficiency of a bond furnished as security in a judicial proceeding to rule the party furnishing the bond into the trial court in which the proceeding was brought to show cause why the bond should not be deemed insufficient. Because no such rule to show cause is evident from the record before us, Mark is precluded from now raising the issue of the sufficiency of the bond on appeal. Hall v. Fertility Institute of New Orleans, supra.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.

. In November of 2008, the name of the corporation was changed to Louisiana, Granite Yard, Inc.

. The L and A are intended to be pronounced separately.

. It has been held that the determination by the Secretary of State that the names of two corporations are not deceptively similar is not conclusive or binding on the court, but is persuasive and entitled to some weight. Couhig’s Pestaway Co. v. Pestaway, Inc., 278 So.2d 519 (La.App. 3d Cir.1973); but see, Glenn Morris and Wendell H. Holmes, Business Organizations, 7 Louisiana Civil Law Treatise, § 8.05 (2009), suggesting that no weight be given at all to such acceptance on the question of likelihood of confusion in the relevant marketplace.

. La. R.S. 51:222 provides that any person who shall use without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered with the Secretary of State in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source or origin of such goods or services may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use display or sale as may be by the said court deemed just and reasonable. (Emphasis added).

. La. C.C.P. art. 3610 provides that a preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security indemnifies the person wrongfully restrained or enjoined for costs and damages.