STEWART, J.
11 At issue in this appeal is whether the trial court erred in denying a request for a preliminary injunction to enjoin the construction of a road located in the City of Shreveport on the grounds that neither the approval of the governing authority nor the necessary permits have been obtained. For the reasons set forth in this opinion, we find that the trial court did not abuse its discretion in denying the preliminary injunction, and we affirm the trial court’s judgment.
PROCEDURAL HISTORY
This matter is enmeshed in the controversy surrounding the possible future extension of Louisiana Highway 3132 (“3132”) south of its present terminus at Louisiana Highway 523, which is also known as Flournoy-Lucas Road in the City of Shreveport and will be referred to as such in this opinion. The road at issue, designated as Forbing Ridge Road, is being constructed south of Flournoy-Lucas near its intersection with 3132 in an area that is within the corridor for the extension of 3132. As discussed infra, the road is being constructed to satisfy a stipulation included in ordinances that rezoned property for the development of the Esplanade Subdivision (“Esplanade”).
The future route of the 3132 extension is at the heart of a suit for declaratory and injunctive relief filed on September 4, 2012, by Willis-Knighton Health System, Inc., a/k/a Willis-Knighton Medical Center (“Willis-Knighton”) and the Finish 3132 Coalition, L.L.C., under Docket No. 562,-337. Defendants named in the suit include the Northwest Louisiana Council of Governments (“NLCOG”); the Shreveport Metropolitan |2Planning Commission of Caddo Parish (“MPC”); the Louisiana Department of Transportation and Development (“DOTD”); the Shreveport City Council (“City Council”); Buchart-Horn, Inc., a consulting firm that prepared the Stage “0” Study concerning feasible alternative routes for the 3132 extension; Cedric Glover (“Mayor Glover”), individually and as mayor of the City of Shreveport; Ron Norwood (“Norwood”), individually and as city engineer for the City of Shreveport; J. Kent Rogers, individually and as the executive director of the NLCOG; Timothy A. Larkin (“Larkin”); *58 Larkin Development North, L.L.C. (“Lar-kin North”); and Larkin Development at Railsback, L.L.C. (“Larkin Railsback”). The petition catalogues a litany of allegations concerning actions by the defendants that have impacted or may impact potential routes for the projected 3132 extension. Along with other relief sought, the petition prays that Larkin, Larkin North, and Larkin Railsback (“Larkin defendants”) be enjoined from proceeding with the development of Esplanade until they obtain permanent access to Flournoy-Lu-cas and until the route for the proposed 3132 extension has been determined.
On November 19, 2012, Willis-Knighton filed a second suit under Docket No. 564,-141 against Mayor Glover and Norwood, in their individual and official capacities, the City of Shreveport, and the Larkin defendants. The petition alleges that the Lar-kin defendants are proceeding with construction without approval of the MPC and without having applied for and obtained the permit and City Council approval required under Sections 78-55 et seq., of the Shreveport Code of Ordinances, for construction of a |3driveway, approach or entrance in a residential area of the city or upon or to property zoned for residential use. The petition alleges that Mayor Glover and Norwood committed ultra vires acts to aid the Larkin defendants to proceed without proper authorization. The petition prays for a temporary restraining order as well as preliminary and permanent injunctions to prohibit further ultra vires acts and to prohibit the Larkin defendants from conducting, performing, or carrying out construction of the road until they secure the necessary permits and approvals.
The trial court set both matters for a hearing to determine whether they should be consolidated or whether the filing of the second suit rendered the first moot. The defendants filed various exceptions, including an exception of lis pendens by the Larkin defendants in response to the second suit. On December 19, 2012, the trial court, in lieu of granting the exception of lis pendens, ordered the two cases consolidated and directed Willis-Knighton to amend and supplement its pleadings in Docket No. 562,337. The trial court also allowed Willis-Knighton to proceed immediately with its request for injunctive relief under Docket No. 564,141. An evidentiary hearing began that day and concluded on December 21, 2012, at which time the trial court denied Willis-Knighton’s request for a preliminary injunction. This devolutive appeal followed.[1]
| ¿FACTS
The facts related here are taken from the testimony presented and documents introduced into evidence at the preliminary injunction hearing.
Larkin Railsback owns approximately 100 acres of land that lies to the north of Railsback Road at its intersection with Ellerbe Road and south of Bayou Pierre, which generally lies on an east to west axis north of Railsback Road and south of Flournoy-Lucas. Larkin North owns approximately 37 acres of land located between Bayou Pierre and Flournoy-Lucas.
By Ordinance No. 4724 of 2007, enacted by the Caddo Parish Commission as recommended by the MPC, the Larkin Rails-back property was rezoned from R-A, Residence-Agriculture District, to R-1B, Suburban, One-Family Residence, *59 Planned Unit Development (PUD) District. By Ordinance No. 5070 of 2011, approximately 10 additional acres north of Rails-back Road were rezoned in the same manner to expand the Esplanade’s boundary. The City of Shreveport has since annexed the property affected by the ordinances. Both zoning ordinances include the following stipulation (“Stipulation No. 8”), which states:
New homes shall not be constructed except homes that front Railsback Road until documentation from the appropriate authorities having jurisdiction has been received by the Planning Director that clearly demonstrates to the satisfaction of the Planning Director that the Flournoy-Lucas entrance, bridge and boulevard from Railsback Road to Flournoy-Lucas Road has been completely constructed to in [sic] compliance with any and all local state and federal guidelines that may be applicable to said construction.
The record indicates that the requirement for a Flournoy-Lucas access was an effort to appease Railsback Road property owners who had concerns | sabout increased traffic generated by the Esplanade. The initial plan was for a joint or shared access with The Glen Retirement System (“The Glen”), the owner of the property adjacent to that owned by Larkin North on Flour-noy-Lucas.[2] According to Rhonda Beau-vais (“Beauvais”), The Glen’s president, discussions about joint access began in 2007 with Larkin, DOTD, NLCOG, and others and continued until about January 2012. By a letter dated March 19, 2012, Beauvais informed DOTD that The Glen’s board of directors had decided not to participate in the shared access project. Notably, Stipulation No. 3 does not specify a location or alignment for the road connecting to Flournoy-Lucas.
After The Glen’s decision, Larkin North began implementing plans to construct Forbing Ridge Road through its property from a bridge constructed over Bayou Pierre to Flournoy-Lucas near its intersection with 31S2.[3] On April 3, 2012, Lar-kin North signed a contract with Ronald G. Carlson, Inc., for construction of the road. On April 12, 2012, Larkin, as a managing member of Larkin North, executed a document entitled “Public | ^Servitude of Passage and Access Road Right-of-Way Relocation.”[4] The servitude or right-of-way is a 60-foot wide strip from the bridge over Bayou Pierre to *60 FIournoy-Lucas. The document, executed by Larkin and recorded in the Caddo Parish public records, includes the following “Road Dedication Note:”
The undersigned owner hereby dedicates a public servitude of passage upon the described right of way. The servitude of passage or any portion thereof may not be revoked without the dedication of a replacement servitude connecting the FIournoy-Lucas Road to the existing Bayou Pierre Bridge. The roadway improvements within the servitude shall be constructed to comply with all local, state and federal guidelines that are applicable to said construction. The roadway shall be privately maintained until such time as public dedication is granted.
Also on April 12, 2012, Larkin wrote to Charles Kirkland (“Kirkland”), executive director of the MPC, to inform him of the planned improvements for roadway access between the Bayou Pierre bridge and FIournoy-Lucas. The letter states:
When these improvements are completed they have been designed and located to fulfill the stipulation by the [MPC] to construct the final segment of a roadway to complete a connection from Railsback Road to FIournoy-Lucas Road in compliance with local, state, and federal guidelines that are applicable.
The purpose of this letter is to submit this to the MPC, prior to the commencement of the roadway construction, a request that the commission approve and verify that the proposed alignment along with the servitude for these improvements comply with that stipulation.
Larkin testified that he first asked Kirkland to verify that the road would satisfy the stipulation. Kirkland advised him to make his request to |7the MPC. In his testimony, Kirkland agreed that Larkin’s letter was not an application for the MPC’s approval of construction of the road. Rather, Larkin was looking for some guarantee or assurance that he would be able to proceed with building houses in Esplanade once the road was constructed. Kirkland’s testimony was somewhat contradictory on the issues of whether the road is private or public and whether its construction required MPC approval. He explained that the MPC’s subdivision regulations are not applicable because the road is not located on the property platted and approved for the Esplanade development and is not part of the master plan. Rather, it is located south of the subdivision property on raw, undeveloped land that is zoned residential.
Larkin North’s request was denied by the MPC at a public hearing on May 2, 2012. A number of speakers voiced opposition, which mostly concerned the impact of the road on the corridor for the extension of 3132. There were also concerns about the effect of traffic on retirement homes and other residential developments along FIournoy-Lucas. The MPC adopted a motion “to deny the proposed roadway alignment for the primary and permanent access to FIournoy-Lucas Road for the Esplanade Development.” The MPC indicated that it would consider at its next public hearing stipulation changes to Ordinance 4724 of 2007 regarding building permits and access. It appears no such changes were made.
Larkin appealed the MPC’s denial to the City Council, which took up the matter on May 22, 2012. The City Council adopted a motion to remand the matter to the MPC with the request that it work with the property owner 18to reach some agreement that would allow for use of the “temporary unapproved construction road” and the issuance of building permits, with any residents using the Railsback Road entrance.
*61 After failing to reach an agreement as directed by the City Council, the MPC affirmed its earlier decision on September 5, 2012. The minutes of the MPC proceedings refer to comments by Desi Sprawls, vice-chairman of the MPC, regarding its consideration of Larkin’s request and the City Council’s remand. As summarized, Sprawls commented that the stipulation speaks for itself. It sets forth the requirements to be met by the applicant and directs the planning director to determine whether they have been satisfied.[5] Sprawls did not see that any action was required by the MPC.
Again, Larkin appealed the MPC’s decision to the City Council, which took up the matter on October 9, 2012. At this meeting, Larkin informed the council that he had obtained from DOTD a permanent access connection permit for the road to connect at Flournoy-Lucas; prior to this he had a temporary permit only. There was discussion among the council members as to whether Larkin was seeking permission to build the road or merely advice as to whether it would satisfy the stipulation. When asked whether the council could prohibit construction of the road, the city attorney opined that it could not because the road was required by Stipulation No. 3. 1 ^Council members offered competing motions to uphold the MPC’s decision, to modify it to state that the request presented an administrative question that must be decided by the planning director upon completion of the road, or to dismiss because the council does not provide advisory opinions. The City Council approved the latter and dismissed the appeal. It provided no definitive answer in response to Larkin’s request.
As stated above, Larkin had by this time obtained from DOTD the access connection permit for connection of the road to Flournoy-Lucas. By letter dated October 10, 2012, Larkin informed Norwood that he intended to proceed with construction, and he submitted the construction plans, the construction contract, and a check from Larkin Railsbaek for an inspection fee equal to 5% of the contract amount ($51,904.78), as required by Sec. 78^12 of the Shreveport Code of Ordinances, discussed infra.[6]
By letter dated October 26, 2012, Nor-wood informed Larkin that the items he submitted were acceptable and that the city engineer’s office would provide the necessary inspection. The letter also informed Larkin that future dedication of the roadway would require approval of the plans by the director of the MPC and city engineer, as well as approval of the dedication by the City Council. That same day, the City of Shreveport issued Larkin North a land altering permit for clearing *62 and grading of the right of way for construction of the road. On October 30, 2012, the City of Shreveport |inissued to Larkin Railsbaek the permit or receipt reflecting the payment of $51,904.78 for engineering and inspection fees for construction of the road. According to Nor-wood, neither the land altering permit nor the assignment of an inspector required approval of the MPC or City Council. He also testified that no other permit was required from the City of Shreveport for construction to begin. Norwood explained that, because Flournoy-Lucas is a state highway, the City of Shreveport is not responsible for maintaining it and does not issue permits for connections to it.
Construction of Forbing Ridge Road began soon thereafter. At the preliminary injunction hearing, Ronald Carlson, the owner of the company constructing the road, testified that it was 70 percent complete and would be substantially complete by the end of January 2013. As explained by Craig, the road is constructed as a boulevard from its connection with the bridge at Bayou Pierre. The boulevard section has 14-foot concrete lanes that converge to two 12-foot asphalt lanes as the road nears Flournoy-Lucas, where it then flares to approximately 45 feet at the connection. The asphalt construction will accommodate any future need to change the roadway alignment at DOTD’s direction. Because there is a median between the lanes on Flournoy-Lucas where the road connects, the road has right-in, right-out access only, in accordance with DOTD policy. According to the construction contract, the total construction cost is $1,052,095.00.
ASSIGNMENTS OF ERROR
Willis-Knighton asserts that the trial court erred in denying its application for a preliminary injunction to enjoin and prohibit the Larkin 1 ¶, defendants from proceeding with construction of the road.[7] It asserts that the trial court failed to find that construction could not commence without approval of the City Council as required by Section 78-56 of the Shreveport Code of Ordinances. It also asserts that the trial court failed to find that prior approval of the MPC was required under the zoning ordinances and pursuant to La. R.S. 33:140.14.
DISCUSSION
Injunctive relief is a harsh, drastic, and extraordinary remedy that is typically available only where the moving party is threatened with irreparable injury or loss and is without an adequate remedy at law. Louisiana Granite v. LA Granite Countertops, L.L.C., 45,482 (La.App.2d Cir.8/18/10), 47 So.3d 573, writ denied, 2010-2354 (La.12/10/10), 51 So.3d 733; Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App. 1st Cir.03/24/05), 906 So.2d 660. The preliminary injunction is an interlocutory procedural device that is designed to *63 preserve the status quo pending a trial on the merits. Louisiana Granite, supra. Generally, a preliminary injunction may be issued where the moving party makes a prima facie showing that he will prevail on the merits. Id. 112This requires the party seeking the preliminary injunction to show that he will suffer irreparable injury if the injunction is not issued and that he is entitled to the relief sought. Concerned Citizens, supra. However, when the act sought to be enjoined is unlawful or a deprivation of constitutional rights is involved, a showing of irreparable injury is not necessary. Id.; Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597. The trial court has great discretion in granting or denying a preliminary injunction. Louisiana Granite, supra; Lafreniere Park Foundation v. Friends of Lafreniere Park, Inc., 97-152 (La.App. 5th Cir.7/29/97), 698 So.2d 449, writ denied, 97-2196 (La.11/21/97), 703 So.2d 1812.
Willis-Knighton argues that it is not required to prove irreparable injury because the construction of the road is unlawful. Before addressing the alleged unlawfulness of the conduct sought to be enjoined, we find that there is no prima facie showing of irreparable injury, or any injury to Willis-Knighton or Wells. Wells did not testify at the hearing; thus, there is no evidence of what, if any, injury she has allegedly suffered from construction of the road. Willis-Knighton sought to show through the testimony of its employee, Marian Dehan (“Dehan”), manager of community outreach for its retirement community, The Oaks, that construction of the road has adversely affected its business and residents. At most, Dehan’s testimony suggests that there has been an increase in traffic on Flournoy-Lucas in recent years. This increase predates construction of the road during the past few months. Dehan admitted that Flournoy-Lucas had been a two-lane road when The Oaks began operating but that it is now a four-lane highway in the vicinity 113of 3132. Dehan also testified that The Oaks is located about a quarter of a mile from Forbing Ridge Road and that there are two traffic lights between them. Traffic concerns on the part of residents of The Oaks and the speculative effect of increased traffic on its occupancy rate are easily attributable to the widening of Flournoy-Lucas in the vicinity of 3132, not the construction of Forbing Ridge Road during the last few months. There is no evidence of injury to Willis-Knighton from the construction of Forbing Ridge Road.
In the absence of irreparable injury, we now examine whether the construction of Forbing Ridge Road is proceeding in violation of some prohibitory law. Willis-Knighton asserts that the Larkin defendants are proceeding without the permit and City Council approval required by Sections 78-51 and 78-56 of the Shreveport Code of Ordinances, which provide in relevant part as follows:
Sec. 78-51:
(a) No person shall construct any driveway, approach or other entrance from any of the streets of the city across a curbing, sidewalk or other neutral ground without first having obtained a permit therefor from the director of public works or his designee.
(b) An inspection fee shall be charged to each permit holder in the amount of $45.00; provided, however, that should it become necessary for the city to maintain an inspector on any job for a full day or more, in order to properly inspect this work, then the charge shall be $125.00 per day for each inspector furnished by the city department of public works.
Sec. 78-56:
*64 (a) The director of public works shall have authority to issue a permit for the construction of a driveway, approach or entrance in the residential area of the city, or upon or to property zoned for residential use. Such a permit shall be issued by the director of public 114works as a matter of course, unless the director shall find that the granting of such a permit would be unsafe, dangerous or greatly inconvenient to the public, in which event he shall refer the application for the permit to the city council, (b) No permit shall be issued by the director of public works under subsection (a) of this section for the construction of a driveway, approach or entrance exceeding ten feet in width at the property line.
Under these provisions, the City of Shreveport authorizes by permit and /or City Council approval connections of driveways, approaches, or entrances to the streets of the city. Willis-Knighton contends that Larkin North cannot proceed with construction of the road and its connection to Flournoy-Lucas without the City Council’s approval of the permit required by these ordinances. As pointed out by Willis-Knighton, the City of Shreveport, pursuant to its home rule charter, has broad police powers to regulate and control the roads and streets within its municipal limits and may make reasonable regulations for their use. WesT-Erre Dev. Corp. v. Terrebonne Parish, through Police Jury of Terrebonne Parish, 416 So.2d 209 (La.App. 1st Cir.1982), writ denied, 421 So.2d 251 (La.1982); Scott v. City of West Monroe, 95 So.2d 343 (La.App. 2d Cir.1957). A municipality under home rule charter is authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs that is not denied by law. La. Const. Art. 6, § 5(E); La. R.S. 33:361(A).
However, the power of local governments is limited in that “the police power of the state shall never be abridged.” La. Const. Art. 6, § 9; City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748; City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445.
As previously noted, Flournoy-Lucas is a state highway. The DOTD, as an exercise of the police power of the state, is authorized to supervise and regulate all traffic on highways in the state highway system. La. R.S. 32:2(A)(1). Pursuant to this broad authorization, the state through DOTD has the authority to prohibit entrance and exit from private property adjacent to the state highway right of ways. Lambert Development Co. Inc. v. State, 482 So.2d 859 (La.App. 2d Cir.1986), writ denied, 487 So.2d 432 (La.1986). This authorization is set forth by La. R.S. 48:344, which reads:
Entrances and exits from private properties adjacent to the rights-of-way of state highways may be regulated, prohibited, or abolished in the interest of the safety of the traveling public. The chief engineer of the Department of Transportation and Development, from time to time, shall prepare and promulgate descriptions and illustrations of various types and styles of entrances and exits consistent with this purpose and shall issue permits of necessity and convenience for the installation of entrances and exits in accordance with promulgated regulations and standards. The department may apply to the courts for such process as may be necessary to make the provisions of this Section effective.
Pursuant to its authority to prohibit entrances and exits from private property adjacent to state highways, the DOTD is *65 sued an access connection permit to Lar-kin North on September 12, 2012, authorizing connection of Forbing Ridge Road to Flournoy-Lucas. The issuance of that permit is not before this court for review. By issuing the permit, DOTD determined to allow the connection of the road to Flournoy-Lucas, a state highway under its supervision. Under WiUis-Knighton’s argument that a permit and / or City Council approval is required under Sections 78-51 and 78-56, the City 11fiof Shreveport would have the power to countermand DOTD’s authorization allowing connection of the road to a state highway. Such power would impermissibly abridge the police power of the state as exercised by DOTD over state highways. The power to authorize connections to state highways is within the province of DOTD regardless of whether the connection to the highway is within the city limits of a municipality. As previously stated, Norwood testified that the city does not maintain Flournoy-Lucas and does not issue permits for connections to it because it is a state highway. For these reasons, we find that Larkin North was not required to comply with Sections 78-51 and 78-56 prior to commencement of construction.
As noted by Willis-Knighton, the regulations governing issuance of access connection permits by DOTD provide that additional permits may be required by local governing authorities and that issuance of a DOTD access connection permit does not guarantee that the applicant will receive other required state or local permits. LAC 70:1.1501. In fact, Larkin North was required to obtain and did obtain a land altering permit. Norwood testified that this was the only permit required. No one testified otherwise. Additionally, Larkin Railsback, as the developer of Esplanade, paid $51,904.78 in inspection fees for the project to comply with Shreveport Code of Ordinances Sec. 78-42.[8] Presumably, Lar-kin Railsback paid this on behalf of Larkin North because the road is being built to comply with | ^Stipulation No. 3 in order for construction in Esplanade to proceed. The record does not establish that any additional permit or authorization from the City of Shreveport was required.
Now, we turn to Willis-Knighton’s argument that the MPC’s approval was required prior to commencement of construction. Willis-Knighton bases this argument on stipulations included in the zoning ordinances, No. 4724 and No. 5070. According to Willis-Knighton, the ordinances include a stipulation providing for development of the property in substantial accord with the site plan and any significant changes requiring further review and approval by the MPC. They assert that the road is a significant change from the initial plan for joint access with The Glen that requires MPC approval.
Enforcement of zoning ordinances enacted by the City Council upon recommendation of the MPC is governed by La. R.S. 33:140.33[9], which states, with emphasis added:
The city council and the police jury may provide for the enforcement of any ordinance enacted under this Sub-part. A violation of any such ordinance is *66 hereby declared a misdemeanor. In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted, or maintained, or any building structure, or land is or is proposed to be used in violation of any ordinance enacted under this Sub-part, the building inspector, permit and zoning clerk, municipal or parish counsel, or other appropriate authority of the municipality or of the parish, or any adjacent or neighboring property owner who would be specifically damaged by such violation, may, in addition to other remedies, institute injunction, mandamus, or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate such violation, or to prevent the occupancy of such building, structure, or land.
11sUnder this provision, only adjacent or neighboring property owners who would be specifically damaged by a violation of a zoning ordinance may seek injunctive relief. As previously addressed, the record does not establish any injury to Willis-Knighton or Wells resulting from construction of the road. There is no prima facie showing that either Willis-Knighton or Wells, if considered adjacent or neighboring property owners, would be specifically damaged by construction of the road. For this reason, neither Willis-Knighton nor Wells is entitled to injunctive relief based on any alleged violation of the zoning ordinances in this matter.
Lastly, Willis-Knighton asserts that Forbing Ridge Road is a public road by virtue of a formal dedication and, that as a public road, it must approved by the MPC as provided under La. R.S. 33:140.14. This provision pertains to the legal status of the plan, meaning the master plan for the physical development of the City of Shreveport and its environs. In relevant part, La. R.S. 33:140.14 states:
After adoption of the master plan or any part thereof, then and thenceforth no street, park, or any public way, ground, place, or space, no public building or structure, school or school site, or no public utility, whether publicly or privately owned, shall be constructed or authorized in the area of the adopted plan until and unless the location and extent thereof shall have been submitted to and approved by the planning commission; provided that in the case of disapproval, the commission shall communicate its reasons to the City Council or Police Jury, as appropriate, and the City Council or Police Jury, by a vote of not less than two-thirds of its entire membership shall have the power to overrule such disapproval and, upon such overruling, the City Council, Police Jury, or the appropriate board or officer shall have the power to proceed; provided, however, that if the public way, ground, place, space, building structure, school or school site, or utility be one the authorization or financing of which does not, under the law or charter provisions governing the same, fall within the province of the City Council or Police Jury or other body or official of the City of\ 1Shreveport or of Caddo Parish, then the submission to the planning commission shall be by the board or official having such jurisdiction, and the planning commission’s disapproval may be overruled by such board by a vote of not less than two-thirds of its entire membership or by said official.
The italicized language shows that La. R.S. 33:140.14 applies to public ways, places, or spaces, including schools and utilities, that are constructed, authorized, or financed by some city or parish body or other governmental board or official that *67 would have the authority to overrule the disapproval of the MPC and to proceed with the public works. A private person, like Larkin North, would not have authority to overrule the MPC’s disapproval. La. R.S. 33:140.14 does not require prior MPC approval for construction of the road regardless of whether the road is intended to be dedicated as a public road by Larkin North. Having determined that La. R.S. 33:140.14 does not require prior MPC approval for construction of the road, we need not address whether the “Public Servitude of Passage and Access Road Right-of-Way Relocation” executed by Larkin North on April 12, 2012, effected a formal dedication of the road.
For these reasons, we find no abuse of discretion by the trial court in denying the preliminary injunction sought by Willis-Knighton and Wells.
CONCLUSION
We affirm the trial court’s judgment with costs of appeal assessed to the appellants, Willis-Knighton and Karen Wells.
AFFIRMED.
DREW, J., dissents with written reasons.

. The City of Shreveport filed an appellee brief adopting the arguments of the Larkin defendants. Mayor Glover and Norwood, in their individual capacities, filed briefs arguing that the trial court correctly sustained their exceptions of no cause of action. However, the ruling on the exceptions of no cause of action is not before us in this appeal.

.According to a July 29, 2011, letter from Eric Kalivoda, a DOTD deputy secretary, to Larkin, as president of Larkin Development Corporation ("LDC”), DOTD intended to "extend its control-of-access in all four quadrants of the LA 3132/523 interchange.” As part of this process, it intended to construct an access road that would connect with the road in LDC's development and provide functionality for both the development and The Glen. DOTD anticipated transferring its access road to the City once complete. DOTD agreed to allow LDC temporary access to Flournoy-Lucas (La. 523) until it completed the planned access road. The letter concludes by stating that the future extension of 3132 "to the south shall not be impeded by the improvements discussed herein or by any other DOTD, NLCOG, City, MPC, or LDC actions.” Of course, DOTD’s planned access road did not come to fruition.

. The record indicates that there was an existing access road from Flournoy-Lucas that was being used for construction purposes by the Larkin parties and for ongoing construction at the Twelve Oaks subdivision off of Flournoy-Lucas.

. Karen Wells, a resident of the Twelve Oaks subdivision located to the east of the Larkin North property, executed and recorded an acceptance of the servitude of passage on behalf of herself and the public on November 9, 2012. Wells then hied a petition of intervention on December 18, 2012. She did not testify at the preliminary injunction hearing.

. Presumably the planning director refers to the executive director of the MPC. Thus, Kirkland, as planning director / executive director, would be responsible for determining whether Stipulation No. 3 has been satisfied. Whether Forbing Ridge Road would satisfy Stipulation No. 3 is what Larkin sought to determine from Kirkland before proceeding with construction. However, due to the politics and controversy surrounding the potential extension of 3132, the request led to the series of hearings where the MPC and City Council apparently sought to revisit an issue, namely, the construction of the road connecting to Flournoy-Lucas, that had already been authorized by Ordinances 4724 and 5070.

. The letter and record indicate that plans had previously been submitted and modifications had been made as required by the city engineer’s office. A subsequent set of plans dated November 7, 2012, is included in the record. Andy Craig, the chief engineer with the firm which drew up the road plans, testified that plans had been submitted to the city engineer and revised several times and that it is not unusual for additional changes to be made even after the city engineer assigns an inspector.

. Willis-Knighton notes that the trial court failed to provide written reasons for judgment as requested. La. C.C.P. art. 1917 requires the court, when requested by a party in all appealable contested cases, to give written findings of fact and reasons for judgment provided the request is made not later than ten days after the mailing of the notice of the signing of the judgment. Willis-Knighton filed a request for written reasons prior to the preliminary injunction hearing on November 21, 2012, on December 27, 2012, and again on January 4, 2013. We caution the trial court that its duty under Article 1917 is mandatory. The proper remedy for the trial court’s failure to comply with an Article 1917 request is to apply for supervisory review or move for remand to compel the trial court’s compliance. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir. 12/8/99), 748 So.2d 594. No remedy was sought in this case.

. Sec. 78-42 provides in relevant part:
Any contractor, builder or developer shall be levied a construction inspection fee based upon construction costs of streets and drainage projects on properties privately owned, which are intended to be donated to the city for public use.

. La. R.S. 33:140.1, et seq., authorizes the creation and sets forth the powers and duties of the Shreveport Metropolitan Planning Commission, including the making and adoption of zoning plans and the enactment of zoning ordinances.