Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,913-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ETC TIGER PIPELINE, LLC                    Plaintiff-Appellee

versus

LOUISIANA ENERGY                           Defendant-Appellant
GATEWAY LLC

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 84,242

Honorable Amy Burford McCartney, Judge

* * * * *

PHELPS DUNBAR, LLP                         Counsel for
By: H. Alston Johnson, III                 Defendant-Appellant
    Brad M. Boudreaux
    Kevin W. Welsh
    Stephen R. Vick, Jr.
    Anthony J. Gambino, Jr.
    Jordan P. Zeringue
    Nena M. Eddy


ETHAN P. ARBUCKLE                          Counsel for
                                           Defendant-Appellant

BRADLEY MURCHISON
KELLY & SHEA, LLC
By: Kay Cowden Medlin
    Leland Gray Horton
    Ashley Gill Gable

Counsel for
Plaintiff-Appellee

GORDON, ARATA,
MONTGOMERY,
BARNETT, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
By: Scott A. O'Connor

Counsel for Appellee,
American Petroleum
Institute

GORDON, ARATA,
MONTGOMERY,
BARNETT, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
By: Clinton Peck Hayne, Jr.

Counsel for Appellee,
Interstate Natural Gas
Association of America

CARVER, DARDEN,
KORETZKY, TESSIER,
FINN, BLOSSMAN &
AREAUX, LLC
By: Brandon T. Darden

Counsel for Appellee,
Louisiana Landowners
Association

WARREN BENJAMIN BATES, JR.
Assistant Attorney General

Counsel for Appellee,
State of Louisiana

* * * * *

Before COX, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

Defendant, Louisiana Energy Gateway LLC, appeals a trial court judgment in favor of plaintiff, ETC Tiger Pipeline LLC, which granted a preliminary injunction to prevent Louisiana Energy Gateway, LLC from constructing a pipeline based on an ETC Tiger Pipeline, LLC servitude. For the following reasons, we reverse and remand.

## FACTS

ETC Tiger Pipeline, LLC ("ETC") is a subsidiary of Energy Transfer LP ("Energy Transfer"), and an affiliate of a company called Enable Midstream Partners, LP. Louisiana Energy Gateway, LLC ("LEG") is a subsidiary of The Williams Companies, Inc. ("Williams").

In 2009, ETC Tiger obtained a Permanent Easement Agreement from NORWELA Counsel, Boy Scouts of America ("NORWELA") granting unto ETC "an exclusive sixty foot (60') wide free and unobstructed permanent easement in order to construct, operate and maintain one (1) pipeline of any diameter and any appurtenant facilities (all of which shall be and remain the property of Grantee) in, over, through, across, under and along [the NORWELA Property]." ETC has the right to use the ETC/NORWELA servitude "for the purposes of establishing, laying, constructing, reconstructing, installing, realigning, modifying, replacing, improving, adding, altering, substituting, operating, maintaining, accessing, inspecting, patrolling, protecting, repairing, changing the size of, relocating and changing the route or routes of, abandoning in place and removing at will, in whole or in part, a pipeline, for the transportation of natural gas and all by-products thereof or any liquids, gases or substances which can be transported through a pipeline, together with above and below ground appurtenances as

may be necessary or desirable for the operation of the pipeline, over, across, under and upon" the NORWELA Property. The ETC/NORWELA servitude includes additional language relevant to the instant litigation, as follows:

> Although Grantor hereby grants an exclusive permanent easement to the Permanent Easement Property, Grantee agrees to subrogate on a case-by-case basis its exclusive rights hereunder to subsequent grants to others of similar rights for construction, operation and maintenance of the pipeline provided that the exercise of such subsequent rights must accommodate the rights herein granted to Grantee. The rights that must be accommodated include, but are not limited to, (a) Grantee's selection of location of the pipeline within Permanent Easement Property; (b) Grantee's occupancy or planned occupancy of any portion of the Permanent Easement Property; and (c) compliance with Grantee's "work in proximity" rules for encroaching or crossing pipelines and/or facilities.

Specifically, ETC negotiated inclusion of the term "exclusive" and paid a premium for "exclusive" use of servitudes. Furthermore, the language above was prepared by ETC for inclusion in the ETC/NORWELA servitude, as well as other unrelated servitudes sought by ETC. ETC alleges they have not consented to LEG's request to bore or cross its pipeline underneath the ETC pipeline on the NORWELA property.

In March of 2023, NORWELA granted a Pipeline Servitude and Right of Way agreement in favor of LEG crossing the NORWELA property. The LEG/NORWELA servitude primarily traverses adjacent to and north of the ETC/NORWELA servitude until it reaches the eastern NORWELA Property line where it crosses beneath the ETC pipeline. This is the proposed pipeline crossing which prompted this litigation. The LEG/NORWELA servitude contains the following provision in pertinent part:

> **Existing Encumbrances.** The rights of [LEG] acquired in this Agreement are subject to any existing prior recorded leases, servitudes or other encumbrances of record, including, but not limited to the following: (i) any prior recorded encumbrances, leases, mortgages, easements, servitudes, right-of-way,

2

restrictions, including, but not limited to, subdivision restrictions, subdivision plats, building restrictions, and restrictive covenants, and other prior recorded burdens affecting the Grantor's Land and [LEG] is solely responsible for determining and obtaining any consents required from third parties[.]

On May 23, 2023, Ms. Wendy Whitfill-Embry, on behalf of LEG, emailed Mr. Mark Vedral, on behalf of ETC, stating LEG's plans to cross ETC's pipeline system in 42 locations.[1] Ms. Whitfill-Embry advised if ETC expressed no objection by June 6, 2023, their silence would be assumed as no objections. On May 31, 2023, Mr. Vedral emailed Ms. Whitfill-Embry requesting information regarding the proposed crossings and informing her until receipt of the requested information ETC objects to LEG's crossing requests.

On June 30, 2023, LEG filed a petition for declaratory judgment ("Declaratory Judgment") naming ETC as a defendant, involving the NORWELA Property and the pipeline servitudes involved herein. The petition for declaratory judgment states construction of LEG's pipeline is expected to begin by the end of 2023 or early 2024. Subsequently, Mr. Malstrom, on behalf of LEG, informed Mr. Vedral, LEG intended to commence construction of the LEG pipeline despite ETC's objections. LEG chose to accelerate construction on the NORWELA Property, despite the fact LEG has not hired a contractor for construction of the pipeline. Notably, no construction has begun on the LEG pipeline at any location, including the NORWELA Property. ETC sought a preliminary injunction to protect a real right in immovable property.

---

[1] The record provides different number of times which LEG pipeline will cross ETC pipeline (42 and 43 times). This opinion will state the crossing will occur 42 times.

3

The district court granted ETC's requested restraining order in July 2023 without a formal hearing and it set ETC's requested preliminary injunction on August 15, 2023, where it heard testimony from two ETC witnesses and three LEG witnesses. The district court found ETC's servitude allowed the construction, operation, and maintenance of one pipeline of any diameter; the servitude allowed ETC to replace, improve, add, alter, change the size of, relocate, and change the route of the pipeline; and the servitude contained no depth limitation. The district court also held proving irreparable harm is not necessary for an injunction of this nature. However, ETC has proven irreparable harm would occur if LEG's pipeline were built because it will stay there forever.[2]

The trial court found both ETC/NORWELA and LEG/NORWELA servitudes are clear and explicit. A plain reading of the respective servitudes does not lead to absurd consequences. Accordingly, the court need not go beyond the four corners of each document. Reading the ETC/NORWELA servitude as a whole and utilizing the ordinary meaning of the word "exclusive," ETC agrees to subrogate its exclusive rights, on a case-by-case basis.

The district court granted ETC's requested preliminary injunction based on written reasons with a formal order on December 18, 2023.

LEG appealed.[3]

---

[2] The proposed pipeline would encroach upon the ETC Tiger/NORWELA servitude and bore beneath the 42" ETC Tiger pipeline to install LEG's 36" pipeline.

[3] The following parties have filed amicus briefs in support of LEG and allowing the pipeline crossing: American Petroleum Institute, Interstate Natural Gas Association of America, Louisiana Landowner's Association, Inc., and The State of Louisiana- Office of the Attorney General.

## STANDARD OF REVIEW

A trial court has broad discretion in ruling on a preliminary injunction and its ruling will not be disturbed absent an abuse of discretion. *Powertrain of Shreveport, L.L.C. v. Stephenson*, 49,327 (La. App. 2 Cir. 10/1/14), 149 So. 3d 1274.

According to La. C.C.P. art. 3601, an injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. In order to obtain a preliminary injunction a plaintiff must show he will suffer irreparable harm if the injunction is not granted, that he is entitled to the relief sought, and he must make a prima facie case showing that he will prevail on the merits. *Louisiana Granite Yard, Inc. v. LA Granite Countertops, L.L.C.*, 45,482 (La. App. 2 Cir. 8/18/10), 47 So. 3d 573, *writ denied*, 10-2354 (La. 12/10/10), 51 So. 3d 733.

## DISCUSSION

ETC addressed the rules NORWELA, as grantor, and ETC, as grantee, will follow relating to the servitude granted on NORWELA's property. Paragraph 7 of the ETC Tiger servitude provides with emphasizes added:

> Grantor may not use any part of the Permanent Easement Property if such use may damage, destroy, injure, and/or interfere with the Grantee's use of the Permanent Easement Property for the purposes for which the permanent easement is being sought by Grantee. Grantor is not permitted to conduct any of the following activities on the Permanent Easement Property without the written permission of Grantee: (1) construct any temporary or permanent building on the site improvements, other than streets and roads; (2) drill or operate any well; (3) remove soil or change the grade or slope; (4) impound surface water; or (5) plant trees or landscaping.

5

**Grantor further agrees that no above or below ground obstruction that may interfere with the purposes for which this easement is being acquired may be placed, erected, installed, or permitted upon the Permanent Easement Property without the written permission of Grantee.**

According to La. C.C. art. 645, a right of use is governed by usufruct and predial servitudes to the extent their application is compatible. A predial servitude is a charge on a servient estate for the benefit of a dominant estate.[4] In this case, NORWELA is the only estate, and ETC and LEG have servitudes granted to them for the purpose of constructing pipelines. Since this case involves a right of use granted by NORWELA to ETC and LEG, not two estates, the article pertaining to predial servitude does not apply. Furthermore, the language of the servitude granted by NORWELA to ETC provides an exclusive right to lay *one* pipeline. The interpretation of the language refers to the one pipeline, not all future pipelines.[5]

Additionally, ETC's "exclusive" servitude on the NORWELA Property does not allow it to prevent subsequent crossings, including LEG's crossing. In *ETC Tiger Pipeline, LLC v. DT Midstream, Inc.,* 55,534 (La. App. 2 Cir. 4/10/24), 384 So. 3d 458, this Court held a one-time use of the word "exclusive" in a pipeline servitude does not transfer the landowner's right to grant efficacious pipeline servitudes to the "exclusive" servitude holder. This Court explained the civil code contemplates the creation of multiple servitudes on a servient estate. Also, this Court explained "exclusive" pipeline servitudes do not extend to the center of the earth

---

[4] La. C.C. art. 646.

[5] La. C.C. art. 720 provides: Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.

without express language stating as such. This means servitude holders, such as LEG, may cross beneath an existing "exclusive" servitude without violating the real rights of the original servitude holder.

Furthermore, ETC's argument stating LEG's subsequent crossing interferes with its enjoyment of its servitude lacks merit. According to ETC, LEG demanding 42 crossings to be reviewed and approved at one time within nine days violated the established custom of reciprocal crossing. However, NORWELA did not provide ETC, as a servitude holder, the right to approve or deny subsequent servitudes which do not interfere with its one pipeline. There was no showing the installation of the pipelines would adversely affect or cause disturbance to ETC's right to enjoy the property beyond just its existence or presence therein. As mentioned above, ETC agreed to subrogate its rights on a case-by-case basis to subsequent grantees for similar rights. Thus, ETC is without authority to deny or approve LEG's pipeline request without showing irreparable harm to its existing servitude.

Consequently, the record does not reveal how LEG's below ground obstruction of a pipeline will interfere with ETC's servitude rights to operate, maintain, repair, or replace ETC's existing active pipeline. If any adjustments or changes needed to be made, or if there was a safety concern as posed by ETC, then those requests should have been made, rather than blanket denials, which serve as a mechanism to deny others their ability to exercise their real right in immovable property. Furthermore, ETC did not mention it lacked clarity regarding LEG's plans and any surface encroachment. After reviewing this record, we find the district court erred in its interpretation of the ETC/NORWELA servitude. We further find ETC has failed to show irreparable harm to prevail on the merits.

7

**CONCLUSION**

For the reasons set forth herein, the judgment of the district court granting the preliminary injunction is hereby reversed, and this matter is remanded for further proceedings. Costs of the appeal are assessed to plaintiff, ETC Tiger Pipeline, LLC.

**REVERSED; REMANDED.**